(839 P.2d 71)

No. 67,356

FARMERS INSURANCE CO., INC., *Appellee*, v. APRIL ROSEN, by her natural parent, JIM ROSEN; JAMES EDWARD ROSEN, JR.; and GINGER LEE ROSEN, *Appellants*, and CHRISTOPHER LIND, by his natural parent, LANNY LIND; LANNY L. LIND; and LINDA R. LIND, *Defendants*.

Opinion filed October 2, 1992.

*Gerald A. King*, of Armstrong, Teasdale, Schlafly & Davis, of Overland Park, for appellants.

*Arthur S. Chalmers* and *Sidney R. Thomas*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellee.

Before REES, P.J., LEWIS, J., and PAUL E. MILLER, District Judge, assigned.

REES, J.: This is a declaratory judgment action in which defendants April Rosen, James Rosen, Jr., and Ginger Lee Rosen appeal from the summary judgment entered in favor of plaintiff Farmers Insurance Company, Inc. (Farmers). We affirm.

The primary subject here involved is a determination of the limits of Farmers' exposure under an automobile liability insurance policy issued by it.

On February 9, 1989, 17-year-old defendant Christopher Lind, while driving a 1982 Dodge Rampage pickup truck, struck a pedestrian, defendant April Rosen, a daughter of defendants James and Ginger Rosen. April sustained serious physical injuries. The pickup was owned by Christopher's parents, defendants Lanny and Linda Lind.

At the time of the accident, there was in full force and effect an automobile liability insurance policy issued by Farmers to

Lanny and Linda. Under the policy, Lanny and Linda were the named insureds; the pickup was the designated vehicle. As a family member, Christopher was an insured person under the policy.

There also was in full force and effect at the time of the accident a homeowners policy issued by Farmers to Lanny and Linda.

The automobile policy fixed Farmers' limits of liability at $100,000 per person and $300,000 per occurrence. By prosecuting this action, Farmers has sought a determination that its liability exposure for all claims asserted by the three Rosens is limited to the automobile policy's $100,000 per person limit and does not extend to that policy's $300,000 per occurrence limit as claimed by the Rosens. Farmers has also sought a determination that it has no liability under the homeowners policy. The trial court's decision in favor of Farmers on both contentions has brought about this appeal.

Farmers' automobile policy recites:

"[Farmers agrees] . . . to insure you subject to all the terms of this policy. [Farmers] will insure you for the coverages and the limits of liability shown in the Declarations of this policy [$100,000 per person; $300,000 per occurrence].

. . . .

"[Farmers] will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person . . . arising out of the ownership, maintenance or use of a [motor vehicle].

. . . .

"1. The **bodily injury** liability limit for 'each person' [$100,000] is the maximum for **bodily injury** sustained by one person in any **occurrence**. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

"2. Subject to the **bodily injury** liability limit for 'each person' [$100,000] the **bodily injury** liability limit for 'each occurrence' is the maximum combined amount for **bodily injury** sustained by two or more persons in any **occurrence** [$300,000]."

"**Accident** or **occurrence** means a sudden event . . . resulting in **bodily injury** . . . neither expected nor intended by the **insured person**.

"**Bodily injury** means bodily injury to or sickness, disease or death of any person.

"**Damages** are the cost of compensating those who suffer **bodily injury** . . . from an **accident**."

"4. We will pay no more than the maximum limits provided by this policy regardless of the number of . . . **insured persons**, claims [or] claimants . . . ."

Farmers' homeowners policy provides:

"[Farmers] shall pay all damages from an **occurrence** which the insured is legally liable to pay because of **bodily injury** . . . covered by this policy." "**[O]ccurrence** means: a sudden event . . . resulting in bodily injury . . . neither expected nor intended by the insured.

. . . .

"**Bodily injury** means bodily harm, sickness or disease, including care, loss of services and death resulting from the injury.

"[Farmers does] not cover bodily injury . . .:

. . . .

5. Arising out of ownership, maintenance, use, loading or unloading of:

. . . .

b. a **motor vehicle** owned or operated by . . . an insured.

. . . .

6. Arising out of the entrustment of any . . . **motor vehicle**. Entrustment means the permission you give to any other **person** for the use of any . . . **motor vehicle** owned or controlled by you."

" '[Y]ou' . . . [means] the 'named insured' shown in the Declarations [Lanny L. Lind and Linda R. Lind]."

Farmers' automobile policy is free of the ambiguity existing in the policy at issue in *Farm Bureau Mut. Ins. Co. v. Winters,* 14 Kan. App. 2d 623, 797 P.2d 885 (1990), *aff'd* 248 Kan. 295, 806 P.2d 993 (1991). In *Winters,* it was held that the per person/per occurrence liability limits provisions of Farm Bureau's automobile policy were ambiguous. The Farmers' automobile policy now before us subjects the per occurrence limit to the per person limit, a provision missing from the automobile policy in *Winters.* The ambiguity problem found and resolved in *Winters* does not exist here.

The Rosens assert that "because of" April's physical injury, James and Ginger each have a claim for "loss of consortium, and medical bills and expenses." On this appeal, Farmers concedes that (1) under its automobile policy it has promised to pay damages for which any insured person is legally liable because of bodily injury to any person and (2) "since loss of consortium and the payment of medical expenses are damages for which Farmers' insured may be legally liable 'because of' bodily injuries to April Rosen, those damages come within the coverage provision of Farmers' policy." Farmers and the Rosens refer to James and Ginger Rosen's claims as claims "for loss of care and loss of services."

The real question as argued by Farmers and the Rosens is whether James and Ginger Rosen's claims for loss of care and loss of services, here admittedly covered damages under Farmers' automobile policy, come within the operation of the automobile policy's per person limitation, with the result being that Farmers' exposure under the automobile policy is limited to the policy's $100,000 per person limit rather than the policy's $300,000 per occurrence limit.

Resolution of this case requires insurance contract interpretation. The construction and effect of insurance contracts are questions of law to be judicially determined. None of the material facts here are disputed by the parties. Where the facts are admitted, it is for the court to decide whether they come within the terms of the insurance contract, and our function is the same as the trial court. *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, 177, 660 P.2d 1374 (1983).

"Insurance is a matter of contract. The parties to a contract of insurance may choose whatever terms they wish, and courts will enforce the policy as written so long as the terms do not conflict with pertinent statutes or with public policy. [Citations omitted.]

. . . .

". . . If there is uncertainty about the meaning of the policy, courts determine the meaning by applying rules of construction. These rules do not apply unless the court first determines that the policy is ambiguous. A policy is not ambiguous unless, viewing it as a whole, there is genuine uncertainty as to which one of two or more possible meanings is the proper meaning. [Citation omitted.] Ambiguity may not be created by viewing the policy in fragmentary segments. [Citations omitted.] And the rules of construction do not ' "authorize a perversion of the language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." ' [Citations omitted.]" *Penalosa Co-op Exchange v. Farmland Mut. Ins. Co.*, 14 Kan. App. 2d 321, 323-24, 789 P.2d 1196, *rev. denied* 246 Kan. 768 (1990).

It is the Rosens' contention that Farmers' automobile policy covers all three Rosens' claims up to the $300,000 per occurrence limit of liability, not the $100,000 per person limit, because James, Ginger, and April Rosen have each suffered "bodily injury." They argue that James and Ginger Rosen's claims for loss of care and loss of services because of April Rosen's injuries are bodily injuries to James and Ginger. The Rosens assert there is ambiguity in the definition of bodily injury in the automobile

policy: "**Bodily injury** means bodily injury to or sickness, disease or death of any person."

The Rosens argue that the policy definition of bodily injury, by using the same two words to define the term, makes the policy ambiguous; therefore, an interpretation of the policy most favorable to the insured must prevail. See *Anderson v. Nationwide Life Ins. Co.*, 6 Kan. App. 2d 163, 167, 627 P.2d 344, *rev. denied* 229 Kan. 669 (1981).

The Rosens further argue that the intent of Farmers and the Linds in the automobile policy is manifested in the homeowners policy, where "bodily injury" is defined as "[b]odily harm, sickness, or disease, including care, loss of service and death resulting from injury." Thus, the Rosens say, James and Ginger each sustained "bodily injury"—loss of care and loss of services—thereby putting into effect the $300,000 limit per occurrence.

The threshold question confronting us is whether there is ambiguity in material language of Farmers' automobile policy.

Again, the automobile policy provides:

"1. The **bodily injury** liability limit for 'each person' [$100,000] is the maximum for **bodily injury** sustained by one person in any **occurrence**. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

"2. Subject to the **bodily injury** liability limit for 'each person' [$100,000] the **bodily injury** liability limit for 'each **occurrence**' is the maximum combined amount for **bodily injury** sustained by two or more persons in any **occurrence** [$300,000]."

Is there genuine uncertainty as to the per person/per occurrence limits of the automobile policy provisions? We do not think so. By the language utilized, it is plainly provided that applicability of the $300,000 per occurrence limit is subject to the $100,000 per person limit, and loss of consortium claims fall within the per person limit. In our view, a loss of care and services claim, generically, is a claim for loss of consortium. We do not find the automobile policy definition of "bodily injury" has created genuine ambiguity despite usage of the same term in defining itself. *Cf. State v. Burton*, 235 Kan. 472, 483, 681 P.2d 646 (1984) ("This court has consistently adhered to the position that no definition could make the concept of 'reasonable doubt' any clearer than the words themselves.").

In support of their argument that the automobile policy's definition of bodily injury is ambiguous, the Rosens have placed substantial reliance upon a footnote to the majority opinion in the Oregon Court of Appeals split *en banc* decision in *Allstate Ins. Co. v. Handegard*, 70 Or. App. 262, 266 n.2, 688 P.2d 1387 (1984), *rev. denied* 298 Or. 704 (1985):

> "According to the policy, 'bodily injury' means 'bodily injury' to any person, including loss of services. Apart from the high probability of confusion arising from any attempt to define a term by restating the term sought to be defined, this policy does not expressly answer the question from whose liability limits a loss of services claim must be recovered.[2]
>
> . . . .
>
> "[2] . . . If we read the policy to say that a single limit applies to physical injury to any person, including loss of services, we still do not know whether the claim for loss of services should be paid from the insurance applicable to the person who sustained the physical injury or from the limits applicable to the person who sustained the loss of services."

*Handegard* has been discussed and distinguished. *Bain v. Gleason*, 223 Mont. 442, 726 P.2d 1153 (1986); *Viking Insurance of Wisconsin v. Popkin*, 102 Or. App. 660, 795 P.2d 1091 (1990). Without surprise, *Handegard, Bain,* and *Popkin* reveal that the particular policy language involved is crucial to a decision. The language of Farmers' automobile policy clearly is distinguishable from that involved in *Handegard. Handegard* does not compel that we find ambiguity here.

We are convinced that, unlike the policy involved in *Handegard,* Farmers' automobile policy unambiguously provides that claims for loss of care and loss of services attributable to a person's physical injury fall within that particular person's per person limit of $100,000. The Rosens cannot create ambiguity by simply focusing on a fragmentary segment of the definition of "bodily injury."

In interpreting the terms of the automobile policy, we decline to adopt the definitional language in the homeowners policy (defining bodily injury to include "care, loss of service"). The two policies are separate. There is no tenable basis for transferral of the terms and language of one insurance contract to the other.

As previously mentioned, *Winters,* 14 Kan. App. 2d 623, is distinguishable. It affords the Rosens no support.

We are persuaded and hold that the pertinent language of Farmers' automobile policy is unambiguous, that coverage under Farmers' automobile policy for James and Ginger Rosen's claims is subject to the policy's $100,000 per person liability limit applicable to April Rosen's claim, and that Farmers' exposure for the three Rosens' claims is limited to $100,000.

The Rosens additionally argue that the trial court erred in holding that the Linds' homeowners policy affords no coverage for claims arising out of the accident. We disagree.

The homeowners policy provides: "[Farmers] shall pay all damages from an **occurrence** which the **insured** is legally liable to pay because of **bodily injury** . . . covered by this policy."

As the trial court did, we agree that exclusionary clause No. 6 applies. There, it is provided: "[Farmers does] not cover bodily injury . . . 6. Arising out of the entrustment of any . . . **motor vehicle**. Entrustment means the permission you give to any other **person** for the use of any . . . **motor vehicle** owned or controlled by you."

"It is the general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 149, 519 P.2d 737 (1974).

The Rosens have alleged in their pleading that Lanny and Linda Lind wrongfully failed to educate, train, instruct, and familiarize their son, Christopher, with respect to the gear box, lever, and mechanism in the pickup involved in the accident. The Rosens insist that the exclusionary clause is inapplicable because they are not alleging Christopher Lind was incompetent, habitually careless, or incapable of operating a vehicle with ordinary care. See *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. at 150-51.

The exclusionary clause deals with the entrustment of a motor vehicle, which is defined as "permission you give to any other person for the use of any . . . motor vehicle owned or controlled by you." Lanny gave permission to his son to use the pickup. For the purpose of the exclusionary clause, entrustment does not have to be negligent. The Rosens' effort to distinguish negligent

entrustment and deficient supervision or training is irrelevant. The exclusion applies to this case whether or not the entrustment was negligent and whether or not Lanny and Linda knew or should have known Christopher was·incompetent, habitually careless, or incapable of operating a vehicle with ordinary care.

Farmers does not have a duty to defend or indemnify under its homeowners policy.

Affirmed.