(28 P.3d 1046)
No. 85,901

MARIA PRUGUE, AS GUARDIAN AND CONSERVATOR OF MARTIN
PRUGUE, *Appellant,* v. JEFF DAVID MONLEY, *et al., Appellees.*

Opinion filed August 10, 2001.

*James M. Crabtree,* of Lenexa, for appellant.

*Larry E. Benson,* of Kansas City, for appellees.

Before MARQUARDT, P.J., JOHNSON, J., and JACKSON, S.J.

JOHNSON, J.: Maria Prugue filed this lawsuit after her son, Martin, was injured in an automobile accident with Jeff David Monley. At the time of the accident, Monley was an employee of Coyote's, Inc. (Coyote's), a bar in Lawrence, Kansas. Prugue appeals from the district court's grant of summary judgment in favor of defendant Coyote's. We affirm.

In the early morning of April 26, 1997, on Kansas Highway 10 in Douglas County, Monley drove his vehicle across the centerline and collided head-on with Prugue's vehicle. Prugue suffered severe and extensive injuries. Monley was the manager of Coyote's. Shortly before the accident, Monley had completed his shift at Coyote's and closed the bar.

Prugue filed this lawsuit against defendants Monley, Richard M. Monley (the owner of Monley's vehicle), and Coyote's (Monley's employer). Prugue's claims against the Monleys are not involved in this appeal. Prugue's claim against Coyote's is based on Monley's alleged alcohol consumption while on duty prior to the accident. There is no evidence of Monley's blood alcohol level in the record, but Monley admitted to consuming four or five mixed drinks between 7 and 9 p.m. on the night of the accident.

The district court found there was no legal or factual basis upon which Coyote's could be liable to Prugue for Monley's off-duty actions. Prugue argues his action against Coyote's should survive summary judgment because: (1) Coyote's had a duty of reasonable care in preventing Monley from harming or creating a foreseeable risk of harm to third parties, as set forth in § 317 of the Restatement (Second) of Torts (1977); (2) Coyote's gratuitously undertook a duty to prevent its employees from drinking on duty because of the foreseeable risks posed to third parties, creating liability pursuant to § 324A of the Restatement (Second) of Torts (1977); (3) Coyote's should be held liable on a theory of negligent hiring, retention, or supervision; and (4) Monley's alcohol consumption was within the scope of his employment, creating Coyote's liability on the theory of respondeat superior.

The standard of review on summary judgment is well established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject

to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

Whether a legal duty exists is a question of law over which this court has unlimited review. *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 1044, 934 P.2d 121 (1997).

*Restatement (Second) of Torts § 317*

Section 317 "imposes a duty on the employer to exercise control over the employee acting outside the scope of employment under limited circumstances." *Meyers v. Grubaugh*, 242 Kan. 716, 720, 750 P.2d 1031 (1988). These limited circumstances exist when:

"(a) the servant
    (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
    (ii) is using a chattel of the master, and
"(b) the master
    (i) knows or has reason to know that he has the ability to control his servant, and
    (ii) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 317.

Comment (b) to § 317 states:

"A master is required to police his own premises . . . . On the other hand, the master as such is under no peculiar duty to control the conduct of his servant while he is outside of the master's premises, unless the servant is at the time using a chattel entrusted to him as servant."

Prugue makes the creative argument that: (1) the liquor was Coyote's' chattel; (2) Monley ingested the liquor while on duty; and (3) Monley was continuing to use Coyote's' chattel (liquor) at the time of the accident. Coyote's counters with the equally creative argument that, following ingestion, the liquor became a part of Monley by accession and ceased to be Coyote's' chattel.

Fortunately, we need not ruminate on the question of whether ingested alcohol remains a chattel until fully metabolized by the body. The facts of this case are virtually indistinguishable from those in *Thies v. Cooper*, 243 Kan. 149, 753 P.2d 1280 (1988). In *Thies*, the employer, a beer wholesaler, provided a hospitality

lounge on the premises for the use of its employees in which cereal malt beverages, soda pop, and coffee were provided free of charge. After consuming seven beers at work, the defendant struck and killed a pedestrian while driving home. The *Thies* court noted that "[t]he majority of jurisdictions have refused to impose liability on employers who have furnished liquor to employees for injury which occurred when the employee became intoxicated and caused injuries to a third party off the premises." 243 Kan. at 154. Specifically finding § 317 did not apply, the court held that under Kansas law, an employer who makes available uncontrolled amounts of free alcoholic beverages to its employees on the premises may not be held liable for any tort committed by an employee while driving home from the workplace in an intoxicated condition. *Thies*, 243 Kan. at 150, 156.

Prugue unsuccessfully attempts to distinguish *Thies*, by claiming the *Thies* employees were only permitted to drink alcohol after work hours. However, in *Thies*, the parties stipulated that, despite a policy prohibiting the consumption of alcohol during work hours, it was a common practice for employees to drink the beer while on duty. 243 Kan. at 150. Viewing the facts of the instant case in the light most favorable to the plaintiff, we can conclude that Monley occasionally drank alcohol on duty despite a policy prohibiting such behavior. The holding in *Thies* controls this issue. Coyote's owed Prugue no duty under the circumstances.

*Restatement (Second) of Torts § 324A*

According to Coyote's' employee manual, drinking alcohol while on duty was strictly prohibited. The manual provides: "Anyone caught consuming alcoholic beverages while on duty will be terminated immediately. No questions asked, no second chances." The manual did not exempt managers from the rule.

Prugue argues that by adopting the rule, Coyote's gratuitously undertook a duty to prevent its employees from drinking on duty to protect third parties from the foreseeable risks created by alcohol consumption. Prugue cites § 324A of the Restatement (Second) of Torts:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

A similar question was presented to the court in *Meyers*, 242 Kan. 716. In *Meyers*, the court refused to impose liability on the defendant's employer when the defendant drank alcohol during work hours and injured a third party off duty, off the employer's premises. 242 Kan. at 716-17. The employer, the State of Kansas, prohibited the consumption of alcohol by employees during work hours pursuant to its contract with the federal government and various statutes and regulations. The court held that these provisions did not operate to establish any duty to third parties. 242 Kan. at 719-21.

Section 324A does not apply here because Coyote's did not undertake to render any service to Monley which was necessary for the protection of third parties. See *Meyers*, 242 Kan. at 723. Coyote's' owner, Joseph K. Benskin, stated that the alcohol policy was in place to make certain employees could perform their jobs and to shield Coyote's from litigation. There is simply no evidence, as Prugue suggests, that Coyote's adopted the policy to protect third parties from injuries inflicted by its intoxicated employees. Coyote's owed Prugue no legal duty.

*Negligent hiring, retention, or supervision*

Next, Prugue argues Coyote's should be held liable on a theory of negligent hiring or retention. Kansas has long recognized a cause of action for negligent hiring. An employer may be held liable for injuries to a third party which are the result of the unfitness or incompetence of the employee. The employer is negligent in hiring or retaining such an employee when the employer knew or should have known of the employee's incompetence or unfitness. *Schmidt*

*v. HTG, Inc.*, 265 Kan. 372, 397, 961 P.2d 677 (1998). However, in every Kansas case where an employer's liability for injuries to a third party was predicated on a negligent hiring theory, "the existence of a duty to the injured party was based on actions against a customer or co-worker which took place on the working premises during the time employment services were normally rendered." *Schmidt*, 265 Kan. at 401. A similar fact situation is not present in this case.

Moreover, the only evidence even suggesting Monley would be unfit for his employment in a drinking establishment was the DUI citation he received almost 5 years prior to the accident. Even assuming Benskin knew about the DUI, he still was not negligent in hiring, retaining, or promoting Monley to manager of Coyote's. At no time was Monley ineligible to work in a drinking establishment in the state of Kansas. See K.S.A. 41-2610. Monley was never actually convicted of driving under the influence of alcohol because he was allowed to enter into a diversion agreement. See K.S.A. 8-1009.

Prugue also argues Coyote's was negligent in failing to supervise Monley. For support, Prugue cites 30 C.J.S., Employer-Employee § 186: "The master, in selecting an employee, must exercise a degree of care commensurate with the nature and danger of the business in which he is engaged and the nature and grade of service for which the servant is intended . . . ." Prugue's argument fails even according to his own authority. As manager, Monley was in charge of most of Coyote's' operations, including the supervision of all other employees. Monley was subordinate only to Benskin. The nature of Monley's position as manager implies that he was not really *supervised* by anyone. Again, Benskin had no reason to believe Monley was unfit, even considering the DUI diversion. Benskin's cursory supervision of Monley was therefore not inappropriate under the circumstances.

Viewing the evidence in the light most favorable to the plaintiff, there is simply no evidence that Monley was unfit for his employment at Coyote's. Consequently, Benskin could not possibly have foreseen this tragedy would occur. Accordingly, the district court's

grant of summary judgment in favor of Coyote's on Prugue's negligent hiring, retention, or supervision claim should be affirmed.

*Respondeat Superior*

Each of the above arguments assumes Monley acted outside the scope of employment when he consumed alcoholic beverages during work hours and subsequently caused a motor vehicle accident. Thus, in the alternative, Prugue argues that Monley's alcohol consumption was within the scope of his employment. Accordingly, Prugue contends, Coyote's may be held liable for the foreseeable consequences of those actions on the theory of respondeat superior.

The question is well settled that the acts of an agent within the scope or apparent scope of his or her authority are binding upon his or her principal. *Cross v. Aubel,* 154 Kan. 507, 119 P.2d 490 (1941). Prugue correctly points out that *Thies* recognizes cases from other jurisdictions where the facts were held sufficient to raise a jury question of whether an employee's alcohol consumption was within the scope of employment. 243 Kan. at 154 (citing *Harris v. Trojan Fireworks Co.,* 120 Cal. App. 3d 157, 174 Cal. Rptr. 452 [1981]); *Romeo v. Van Otterloo,* 117 Mich. App. 333, 323 N.W.2d 693 (1982), *overruled by Millross v. Plum Hollow Golf Club,* 429 Mich. 178, 413 N.W.2d 17 (1987); *Dickinson v. Edwards,* 105 Wash. 2d 457, 716 P.2d 814 (1986). *Thies* did not squarely address this issue.

An employee acts within the scope of employment if he or she performs services for which he or she has been employed or does anything reasonably incidental to the employment. "The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it." *Commerce Bank of St. Joseph v. State,* 251 Kan. 207, 210, 833 P.2d 996 (1992). Here, however, the facts simply do not indicate that drinking alcohol was within the scope of Monley's employment at Coyote's.

The cases finding alcohol consumption within the scope of employment may be easily distinguished from the facts of this case.

In those cases, the employee's consumption of alcohol benefitted the employer in some way. *Harris*, 120 Cal. App. 3d at 164; *Dickinson*, 105 Wash. 2d at 469. Even assuming Monley's on-duty alcohol use was ratified by Coyote's, the evidence in no way suggests that drinking alcohol was inherent in the nature of Monley's other job responsibilities. For example, there is no evidence that Monley was required to socialize or have a drink with customers to promote business. Monley's alcohol consumption benefitted only himself.

Prugue's contention that drinking alcohol, even in the regular course of business, was within the scope of Monley's employment is wholly without support. Again, the facts of this case, when construed in the light most favorable to the plaintiff, are indistinguishable from *Thies*. In both cases, alcohol consumption by employees during work hours was prohibited by company policy. Nevertheless, employees regularly drank alcoholic beverages while on duty. In neither case was there any evidence that drinking alcohol was within the scope of employment. The district court correctly rejected this argument.

*Summary*

Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs. In addition, the injured party must show a causal link between the breach and the injury and that he or she suffered damage as a result. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983). Absent special circumstances, a private employer owes no duty to a third party for the tortious acts committed by an employee who, after consuming alcohol on the employer's premises, leaves the premises and injures a third party while off duty. *Meyers*, 242 Kan. at 724.

There are three exceptions to this general rule. First, liability may be imposed when an off-duty employee is either on the employer's premises or using a chattel owned by the employer. Second, the employer may be held liable when it knowingly and voluntarily assumes a duty to control the employee. Third, liability may result when the employer is negligent in employing or in retaining an employee whom the employer knew or should have known to be incompetent or otherwise unfit. 242 Kan. at 724. None

of these exceptions apply to the facts of this case. Moreover, Coyote's may not be held liable for Prugue's injuries on a theory of respondeat superior because Monley's drinking of alcohol and subsequent accident did not occur within the scope of his employment. The district court correctly granted summary judgment in favor of Coyote's.

Affirmed.