856 So.2d 88 (2003)
Zachary CALVIN, Sr. and Kim Jackson Individually and on Behalf of their Minor Child, Zachary Calvin, Jr.
v.
JANBAR ENTERPRISES, INC., Brian Conners, State Farm Mutual Automobile Insurance Company and Xyz Insurance Company.
No. 2003-CA-0382.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 2003.
Rehearing Denied October 31, 2003.
Clifford E. Cardone, Catherine Hilton, Cardone Law Firm, APLC, New Orleans, LA, for PLaintiffs/Appellants, Zachary Calvin, Sr. and Kim Jackson, Individually and on Behalf of their Minor Child, Zachary Calvin, Jr.
Gus A. Fritchie, III, Irwin Fritchie Urquhart & Moore LLC, New Orleans, LA, for Third Party Defendants/Appellees, Gillis, Ellis & Baker, Inc. and Elizabeth Kessel.
Thomas G. Buck, Blue Williams, L.L.C., Metairie, LA, for Defendant/Appellee, First Financial Insurance Company.
Robert T. Garrity, Jr., Harahan, LA, and Andre' P. Guichard, New Orleans, LA, for Defendant/Appellant Janbar Enterprises, Inc.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.).
*89 TOBIAS, JR., Judge.
The plaintiffs, Zachary Calvin, Sr. and Kim Jackson, individually and on behalf of their minor child, Zachary Calvin, Jr. ("Zachary, Jr."), appeal from a summary judgment granted in favor of the defendant, First Financial Insurance Company ("First Financial").[1] In addition, defendant/third-party plaintiff, Janbar Enterprises, Inc. ("Janbar"), appeals from the summary judgment granted in favor of the defendants, Gillis, Ellis & Baker and Mary L. Kessler. For the reasons below, we affirm the judgments of the trial court.
On 24 September 2000, Zachary Calvin, Jr., then 14 years of age, was struck by a 1992 Toyota truck owned by defendant, Janbar, and driven by defendant, Brian Connors ("Connors"), while crossing a street after exiting an RTA bus. At the time of the accident, Connors was an employee of Janbar and was driving the vehicle with the knowledge and permission of his employer. Toxicology results from a police drug test indicated that Connors was driving while under the influence of illegal substances; he was subsequently charged with first degree vehicular negligent injuring, a violation of La. R.S. 14:39.2. Zachary, Jr. suffered severe brain damage, and will require medical and attendant care for the rest of his life.
The plaintiffs sued Janbar, as well as its automobile insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), and its comprehensive general liability ("CGL") insurer, First Financial. In turn, Janbar filed a third-party demand against Gillis, Ellis & Baker and Mary L. Kessler (respectively, "GEB" and "Kessler"), its general liability insurance agents, contending that they failed to procure sufficient automobile liability insurance on its behalf and on behalf of its employees.
First Financial filed a motion for summary judgment, arguing that the CGL policy issued by it to Janbar specifically excluded coverage for auto accidents or injuries arising out of the use or entrustment of a motor vehicle. The plaintiffs opposed the motion, contending that their cause of action against Janbar was for negligent "hiring, retaining, and supervision," and was covered by the policy. The trial court found in First Financial's favor, thereby granting the motion for summary judgment.
GEB and Kessler also filed a motion for summary judgment, arguing that all claims asserted by Janbar against them were preempted by virtue of La. R.S. 9:5606. Because any alleged negligence on their part occurred in 1991 and more than three years had passed before the third-party demand was filed, no action could be established against them. The trial court agreed with GEB and Kessler and the motion for summary judgment was granted.
We review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Canal 66 Partnership v. Reynoir, XXXX-XXXX (La. App. 4 Cir. 1/15/03), 838 So.2d 52. A summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, affords coverage. Westerfield v. LaFleur, 493 So.2d 600 (La.1986).
*90 The record indicates that the principals of Janbar had actual knowledge that Connors used and/or abused illegal substances before, after, and during his employment with Janbar. However, the issue presented is whether a claim for the negligent hiring, retention, and supervision of Connors falls within the CGL policy issued by First Financial. The policy provision in question states in pertinent part:
2. Exclusions
This insurance does not apply to:
* * *
g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "Loading or unloading."
The policy also defines "auto" as a "land motor vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment."
This court dealt with insurance policies and policy exclusions in Michelet v. Scheuring Security Services, Inc., 95-2196 (La.App. 4 Cir. 9/4/96), 680 So.2d 140 and stated, in pertinent part, as follows:
"An insurance policy is a contract between parties and should be construed according to contract principles." Smith v. Matthews, 611 So.2d 1377 (La. 1993). When the language of a policy is clear and not ambiguous, the insurance contract must be enforced as written. When the wording is clear, the courts lack the authority to alter or change the terms of the policy under the guise of interpretation. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759. In interpreting insurance contracts the judicial responsibility is to determine the parties' common intent. Such intent is to be determined according to the ordinary, plain and popular meaning of words used in a policy. La. C.C. arts. 2045 and 2047; Breland v. Schilling, 550 So.2d 609 (La.1989). The liability under a comprehensive liability policy is only as provided in the policy and the attached endorsements. The parties are free to select the types of risks to be covered. First Mercury Syndicate, Inc. v. New Orleans Private Patrol Service, Inc., 600 So.2d 898 (La.App. 4th Cir. 1992), writ denied, 608 So.2d 169 (La. 1992).
A policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict the provisions beyond what the parties contemplated. "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." Louisiana Insurance Guaranty Association, 630 So.2d at 763. "Ambiguity must be resolved by construing the policy as a whole. Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La. 1988)...."
Id. at pp. 11-12, 680 So.2d at 147.
Louisiana courts have held that when automobiles covered under automobile liability policies are not being used for locomotion or transport purposes, but rather for purposes usually associated with the type of risks normally covered by a CGL policy, the CGL policy will provide coverage. See Americas Ins. Co. v. Reliance Ins. Co., 98-1008, p. 7 (La.App. 3 Cir. 2/3/99), 736 So.2d 256, 260, and cases cited therein.
*91 The plaintiffs rely on Smith v. USAA Casualty Ins. Co., 532 So.2d 1171 (La.App. 4 Cir.1988), which, while seemingly supporting plaintiff's position, has been criticized by noted legal commentators. See 15 William Shelby McKenzie & H. Alston Johnson, III, Louisiana Civil Law Treatise § 72 (1996). In addition, a close reading of Smith reveals that its reasoning is contrary to that of the Supreme Court in Picou v. Ferrara, 412 So.2d 1297 (La. 1982).
In Picou, the Court held that a claim against an employer for negligent hiring of an incompetent employee to drive a vehicle was excluded from coverage under the automobile exclusion of the employer's comprehensive general liability policy because use of the vehicle was essential to that theory of liability. Id. at 1299. Similarly, in this case, the use of the motor vehicle is an essential element to the plaintiff's theory of liability, that Janbar negligently hired, supervised, and retained Connors despite knowledge of his frequent drug use. Without the motor vehicle, this accident, as tragic as it was, would not have occurred. Therefore, we find that the provisions of the First Financial policy exclude coverage and that the trial court correctly granted the motion for summary judgment. This assignment of error is without merit.
The second assignment of error concerns the summary judgment granted in favor of GEB and Kessel, Janbar's general liability insurance agents. Janbar contends that they failed to procure sufficient automobile liability insurance on behalf of Janbar and its employees. GEB and Kessel maintain that they were not requested to secure auto liability coverage, but in any event, any alleged negligence by them occurred in 1991 and that the trial court correctly found that peremption applied.
The record indicates that GEB and Kessler served as the insurance agent of Janbar with regard to the acquisition of general liability insurance beginning in 1991 when Janbar, a previously inactive corporation, was reactivated as a janitorial supply service. In 1991, Janbar owned no vehicles and did not purchase any until 1993. Beginning in 1991, however, Janbar purchased a CGL policy through GEB and Kessler; when Janbar purchased its first vehicle in 1993, it elected to insure the vehicle with auto insurance from State Farm, through its agent, Kenneth Soulant, Sr., the father of Janbar's principal corporate officers.
Scott Soulant, Janbar's general manager, testified in his deposition that after acquiring the CGL policy through GEB and Kessler, he continued to renew the policy through them on an annual basis, without having any further conversations with them regarding Janbar's type or amount of coverage. Further, the record indicates that Janbar did not provide any instructions to GEB and/or Kessler regarding any additional coverages after 1991.
The trial court granted summary judgment based on La. R.S. 9:5606A, which states as follows:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of *92 such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
Janbar contends that Kenneth Soulant undertook to evaluate its insurance coverage in 1999 and procure additional coverage, if needed. These actions, however, have nothing to do with GEB and Kessel. Next, Janbar argues that Scott Soulant told GEB and Kessler about the level of coverage Janbar wanted, but that GEB and Kessler neither obtained sufficient coverage nor told him of any gaps in coverage. However, no evidence exists that this conversation took place within the three-year period preceding the filing of the third-party demand. The peremptive period with regard to GEB and Kessler is not affected by any undertakings or lack thereof by Kenneth Soulant and State Farm. Thus, this assignment of error is without merit.
For the reasons set forth above, the judgments of the trial court are affirmed. All costs are assessed equally against the plaintiffs and Janbar.
AFFIRMED; MOTION TO CORRECT RECORD GRANTED.
NOTES
[1] In addition to a brief, the plaintiffs filed a motion to correct the record to add to the official transcript a deposition that was omitted. None of the other parties have opposed the motion, and accordingly, the motion to correct the record is granted.