No. 89,326

SUNNY R. CRIST, *Appellee,* v. HUNAN PALACE, INC., and DE TONG CHEN, and UTICA NATIONAL INSURANCE GROUP, UTICA NATIONAL ASSURANCE COMPANY (GARNISHEE), *Appellants.*

(89 P.3d 573)

Opinion filed May 14, 2004.

*Bradley S. Russell*, of Sanders Conkwright & Warren, LLP, of Kansas City, Missouri, argued the cause and was on the briefs for appellants.

*Carl A. Gallagher*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This is a garnishment action arising out of a personal injury lawsuit filed by Sunny Crist against Hunan Palace, Inc. (Hunan) and its delivery driver. The matter was tried upon stipulations resulting in judgment in Crist's favor, and Crist instituted garnishment proceedings against Hunan's commercial general liability insurance carrier which had refused to defend the suit. The district court granted Crist's motion for summary judgment and denied the insurer's motion for summary judgment. The insurer appealed, and the Court of Appeals affirmed in an unpublished opinion. *Crist v. Hunan Palace, Inc.*, No. 89,326, unpublished opinion filed July 25, 2003. This court granted the insurer's petition for review pursuant to K.S.A. 20-3018.

Three issues are presented on appeal: (1) Did the Court of Appeals correctly uphold the district court's grant of summary judgment to Crist on the ground that Crist's automobile accident personal injury claims were covered by the insurer's commercial general liability policy? (2) Should this court reverse the four-to-three decision in *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213 (1998)? and (3) Did the Court of Appeals

correctly uphold the district court's judgment as comporting with due process?

The case arises from an accident which occurred in July 1999 when De Tong Chen, acting within the scope of his employment as a delivery driver for Hunan, crossed over the centerline and struck Crist's vehicle. Crist filed suit against Hunan and Chen for (1) Chen's negligent operation of his vehicle; (2) negligence imputed to Hunan under the theory of respondeat superior; and (3) Hunan's negligent training and supervision of Chen. Hunan's business automobile liability policy had lapsed. Hunan requested a defense and coverage from its commercial general liability insurance carrier, Utica National Insurance Group, Utica National Assurance Company (Utica). Utica refused to provide a defense or indemnify Hunan because of an automobile exclusion in the general liability policy.

Chen and Hunan reached an agreement with Crist resolving the matter through the presentation of stipulations and testimony of Crist. Chen and Hunan agreed to factual stipulations demonstrating their negligence, and Crist agreed not to execute on the real or personal property of Chen, Hunan, or Hunan's owner, Yuhua Bai. As relevant to this appeal, the journal entry of judgment set out the following stipulations:

"6. The parties stipulate that on or about July 9, 1999, Defendant De Tong Chen was operating his motor vehicle on the Fort Riley Military Reservation within the scope of his employment with Defendant Hunan Palace, Inc. and crossed over the center line thereby striking Plaintiff's motor vehicle.

. . . .

"8. The parties stipulate that Plaintiff would provide testimony from military policemen who were then assigned to the Fort Riley Military Reservation that Defendant De Tong Chen had been observed on many occasions to operate Defendant De Tong Chen's motor vehicle in an unsafe manner and to [sic] fast for conditions.

"9. Neither Defendant stipulates to the fact that Defendant Hunan Palace, Inc. negligently retained or supervised Defendant De Tong Chen. However, the parties do stipulate that a finder of fact would find by a preponderance of evidence that Defendant Hunan Palace, Inc. knew or should have known Defendant De Tong Chen operated his vehicle in an unsafe manner on many occasions and, therefore, an undue risk of harm to others existed as a result of Defendant De

Tong Chen's employment by Defendant Hunan Palace, Inc. Therefore, a finder of fact would find Defendant Hunan Palace, Inc. was negligent in its retention and supervision of Defendant De Tong Chen."

The district court found that Hunan had breached its duty of care and was negligent in failing to provide proper training and supervision of Chen, as alleged in Count III of Crist's petition. The court entered judgment in favor of Crist.

Crist then initiated garnishment proceedings against Utica. Utica moved to set aside the underlying judgment and moved for summary judgment on the basis of the automobile exclusion in the general liability policy. The district court denied both of Utica's motions. Instead, the court granted Crist summary judgment on her garnishment claim against Utica, ruling that the general liability policy provided coverage for Hunan under the authority of *Marquis*, 265 Kan. 317 and *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974).

The Court of Appeals, in affirming the district court, ruled that Utica could not collaterally attack the validity of the underlying civil judgment as a defense in the garnishment proceeding. The Court of Appeals also found that the district court did not err in denying Utica summary judgment and in granting Crist summary judgment. In so ruling, the court relied on *Marquis* for the premise that an automobile exclusion does not exclude coverage for claims of negligent supervision, hiring, or retention because " 'the theory of liability rather than the cause of the accident governs coverage.' " Slip op. at 10 (quoting *Marquis*, 265 Kan. at 328-29).

We granted review of all issues.

*Did the Court of Appeals Correctly Uphold the District Court's Grant of Summary Judgment to Crist on the Ground That Crist's Automobile Accident Personal Injury Claims Were Covered by the Insurer's Commercial General Liability Policy?*

Utica argues the Court of Appeals erred in affirming the district court's grant of summary judgment to Crist on the ground that Crist's claims were covered under Utica's general liability policy.

The Court of Appeals correctly noted that the facts relating to the coverage issue were not in material dispute and that the district

court's decision hinged on interpretation of a written insurance contract, which is a question of law over which appellate courts have unlimited review, citing *Marquis*, 265 Kan. at 324. Slip op. at 9.

The automobile exclusion in Utica's commercial general liability policy read as follows:

"2. Exclusions.
"This insurance does not apply to:

. . . .

"g. Aircraft, Auto or Watercraft
" 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.' "

The Court of Appeals held that under the mandatory authority of *Marquis*, although Crist's injuries were caused by an automobile accident, the above exclusion did not apply to Crist's claim that the accident occurred because Hunan negligently trained and supervised Chen. Slip op. at 10.

The facts of *Marquis* were similar to the facts of the case at bar. Barbi Marquis was severely injured when her car was struck by a vehicle driven by Jerry Auck. Auck was acting in the course and scope of his employment when the accident occurred. The *Marquis* court was asked to determine whether a contractor's policy issued to Auck's employer provided coverage for Marquis' claims of negligent hiring, retention, or supervision.

The policy contained an exclusion for " 'bodily injury or property damage arising out of the ownership, maintenance, use or entrustment of others of any aircraft, auto, or watercraft owned or operated by or rented or loaned to any insured.' " The insurer argued this provision excluded any claims for negligent supervision, hiring, or retention because such claims arose out of the use of an automobile by the insured. *Marquis*, 265 Kan. at 328.

The *Marquis* majority opinion was written by Justice Davis, who was joined by Justices Lockett, Allegrucci, and Abbott. The majority stated the following standards for reviewing insurance policies:

"Generally, exceptions, limitations, and exclusions to insurance policies require narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes the duty to define any limitations on that coverage in clear and explicit terms. [Citation omitted.] If an insurer intends to restrict or limit coverage, it must use clear and unambiguous language in doing so, otherwise the insurance policy will be liberally construed in favor of the insured. [Citation omitted.] The burden is on the insurer to prove facts which bring a case within the specified exception. [Citation omitted.]" 265 Kan. at 327.

Applying these principles, the majority examined the two policies at issue in *Marquis*. One, a homeowner's policy, specifically excluded damage arising from entrustment or supervision " 'with regard to any ownership, maintenance or use of aircraft.' " In contrast, the second policy, a contractor's policy, did not specifically except claims arising from supervision; the exclusion, like the one in this case, applied to damages ' "arising out of the ownership, maintenance, use or entrustment of others of any aircraft, auto or watercraft . . . .' " The majority found that the exclusion in the contractor's policy, "unlike that contained in the homeowner's policy, fails to clearly and unambiguously exclude coverage for negligent supervision, hiring, or retention, and, thus, such claims were covered." 265 Kan. at 327-28.

Next, the *Marquis* court cited *Upland Mutual*, 214 Kan. at 149-50, which held that a homeowner's policy exclusion for bodily injury or property damage arising from the ownership, maintenance, operation, or use of automobiles did not exclude coverage for the insured's liability for negligent entrustment of an automobile to another. The court distilled from *Upland* the rule that the theory of liability rather than the cause of the accident governs coverage. Applying *Upland*, the court held that the contractor's policy failed to clearly and unambiguously exclude coverage for claims of negligent hiring, retention, or supervision of an employee. In so ruling, the court noted that claims of negligent hiring, retention, or supervision are separate and distinct from claims that a driver was negligent. *Marquis*, 265 Kan. at 328-29.

The *Marquis* majority noted: "*Upland* is a minority rule in its recognition that policy provisions excluding coverage for the use of an automobile owned or operated by any insured do not necessarily

exclude coverage for the distinct and separate liability theory of negligent entrustment." 265 Kan. at 329-30. The court observed that the majority rule found the use of the automobile to be the " 'nexus between the supervisor and supervisee' " and thus the claim for negligent supervision is " 'inextricably intertwined' " with the use of the automobile. 265 Kan. at 330 (quoting *Oakley Transport v. Zurich Insurance. Co.*, 271 Ill. App. 3d 716, 727, 648 N.E.2d 1099 [1995]).

However, the majority in *Marquis* noted that the court had repeatedly rejected this view, citing *Upland* and *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456 (1992), a case in which the court recognized "coverage for parents' liability for negligent supervision of their child was sufficient to invoke coverage even though the intentional act of the child in causing damage to a school was excluded from coverage." *Marquis*, 265 Kan. at 330-31. The majority concluded: "At the time the insurance contract was entered into by the parties, the law of Kansas was clearly established." 265 Kan. at 331. Thus, the majority determined that coverage was owed. 265 Kan. at 331.

We agree with the Court of Appeals that there is no basis to distinguish the holding in *Marquis,* and under that precedent the district court correctly determined that the automobile exclusion did not apply to Crist's claim of negligent supervision and training, which was a separate and distinct theory of recovery from the use of an automobile.

### Should this Court Reverse the Four-to-Three Decision in Marquis v. State Farm?

Utica urges this court to reverse the four-to-three decision in *Marquis*. Utica notes that a comprehensive argument for why the decision should be reversed was presented in the concurring and dissenting opinion, which was written by Justice Larson. Chief Justice McFarland and Justice Six joined in the concurring and dissenting opinion. See *Marquis*, 265 Kan. at 335-40. Utica builds upon the dissent and argues that the authority underlying the majority's rationale has been further weakened and a significant conflict has developed in Kansas cases.

As the dissent in *Marquis* noted, the authority cited in *Upland* has been "distinguished almost out of existence" or significantly limited in application. *Marquis*, 265 Kan. at 336. This trend has continued. See *Calvin v. Janbar Enterprises, Inc.*, 856 So. 2d 88, 91 (La. App. 2003) (questioning *Smith v. USAA Cas. Ins. Co.*, 532 So. 2d 1171, 1174 [La. App. 1988], one of the cases supporting the majority); *Society for Christian Activities, Inc. v. Markel Ins. Co.*, 440 Mass. 1006, 795 N.E.2d 545 (2003) (distinguishing *Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 606, 373 N.E.2d 966 [1978], another case supporting the majority); *Allstate Ins. Co. v. Moraca*, 244 N.J. Super. 5, 12, 581 A.2d 510 (1990) (distinguishing *McDonald v. Home Ins. Co.*, 97 N.J. Super. 501, 235 A.2d 480 [1967], cited by majority because of difference in language of exclusionary clause); *Scarfi v. Aetna Cas. & Sur. Co.*, 233 N.J. Super. 509, 516-19, 559 A.2d 459 (1989) (distinguishing and disagreeing with *McDonald*); *Mt. Vernon Ins. Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 351, 645 N.Y.S.2d 433, 668 N.E.2d 404 (1996) (limiting *Lalomia v. Bankers & Shippers Insurance Company*, 35 App. Div. 2d 114, 312 N.Y.S.2d 1018 [1970], to its facts); *New Hampshire Ins. Co. v. Jefferson Ins. Co. of New York*, 213 App. Div. 2d 325, 329, 624 N.Y.S.2d 392 (1995) (same). It is clear that what was the majority rule in 1998 when *Marquis* was decided continues to be the majority rule today. See Annot., *Construction and Effect of Provision Excluding Liability for Automobile-Related Injuries or Damage from Coverage of Homeowner's or Personal Liability Policy*, 6 A.L.R.4th 555.

Utica also argues, as noted by Justice Larson in his dissent, that the *Upland* rule has been disregarded to some extent by the Court of Appeals. The dissenting opinion in *Marquis* cited *United Services Auto. Ass'n v. Morgan*, 23 Kan. App. 2d 987, 939 P.2d 959, *rev. denied* 262 Kan. 969 (1997) (intentional act of insured causally connected to use of car, automobile exclusion of homeowner's policy applies, *Upland* not mentioned); *Newton v. Nicholas*, 20 Kan. App. 2d 335, 887 P.2d 1158, *rev. denied* 257 Kan. 1093 (1995) (*Upland* not mentioned, negligent acts were failure to inspect and secure water tank on truck, directly connected to use, no coverage); and *Farmers Ins. Co. v. Rosen*, 17 Kan. App. 2d 468, 839 P.2d 71,

*rev. denied* 252 Kan. 1091 (1992) (negligent instruction claimed, *Upland* distinguished, theory of liability test ignored, no coverage found). 265 Kan. at 340.

Utica points out two other Court of Appeals decisions which ignored or declined to extend the "theory of liability" approach: *Bush v. Beal*, 26 Kan. App. 2d 183, 987 P.2d 1103, *rev. denied* 268 Kan. 885 (1999), and *State Farm Mut. Auto. Ins. Co. v. Cummings*, 13 Kan. App. 2d 630, 637, 778 P.2d 370, *rev. denied* 245 Kan. 786 (1989).

Finally, Utica argues that this court's decision in *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 962 P.2d 515 (1998), issued just more than 1 month after *Marquis*, is irreconcilable with *Marquis* and *Upland*. In his dissenting opinion in *Brumley v. Lee*, 265 Kan. 810, 831, 963 P.2d 1224 (1998), Justice Six opined that the *Upland* rule had not been consistently followed in Kansas, citing *Bugg*. See *State Farm Ins. Co. v. Gerrity*, 25 Kan. App. 2d 643, 646, 968 P.2d 270 (1998), *rev. denied* 267 Kan. 887 (1999) ("theories of liability are irrelevant when injuries occur from intentional acts"; *Marquis* and *Upland* involved negligence claims).

In her response to Utica's petition for review, Crist argues that this case is not the proper vehicle for overturning *Marquis* since Utica denied coverage and refused to defend Hunan. According to Crist, an insurance carrier wishing to overturn *Marquis* should recognize its duty to tender a defense, subject to a reservation of rights, while filing a declaratory judgment action which would allow sufficient facts to be developed to allow this court to decide whether *Marquis* should be reconsidered.

In a related argument, Crist contends that under the doctrine of stare decisis, this court should not change settled principles of law simply because there is a change in the composition of the court. Crist argues the importance of stare decisis is that it gives parties the ability to predict the legal consequences of their actions.

We agree. In reaching the holding in *Marquis*, the majority impliedly relied upon the doctrine of stare decisis, noting that the law in Kansas was clearly established at the time the insurance contract was entered into. With the additional precedent of *Marquis* in 1998

and the passage of the additional time, stare decisis considerations are even stronger.

In *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 356, 789 P.2d 541 (1990), *overruled on other grounds Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 (1991), we discussed the basis for the doctrine of stare decisis and its importance:

"It is recognized under the doctrine of stare decisis that, once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised. Stare decisis operates to promote system-wide stability and continuity by ensuring the survival of decisions that have been previously approved by a court. . . . The application of stare decisis ensures stability and continuity—demonstrating a continuing legitimacy of judicial review. Judicial adherence to constitutional precedent ensures that all branches of government, including the judicial branch, are bound by law.

". . . The general American doctrine as applied to courts of last resort is that a court is not inexorably bound by its own precedents but will follow the rule of law which it has established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent. [Citation omitted.]"

Although Utica cites additional authority in support of the dissent in *Marquis*, it does not make a new argument or point to any factor not considered and rejected by the majority in *Marquis*. There is no "changing condition" requiring us to abandon the prior authority of *Marquis*.

In addition, more harm than good is likely to come from a departure from precedent on this issue. We are mindful that "[c]onsiderations in favor of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved." *Payne v. Tennessee*, 501 U.S. 808, 828, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991). For many years the law in Kansas has been clear that an insurance exclusion for damage or injury arising from an automobile will not exclude a claim based upon negligent supervision. Insurers have been clearly advised that if they wish to have such an exclusion, the policy should include clear language stating an exclusion such as was used in the homeowner's policy at

issue in *Marquis*. Insureds and insurers alike have relied upon *Marquis* and *Upland*. As such we decline to overrule such precedent.

### Did the Court of Appeals Correctly Uphold the District Court's Judgment as Comporting with Due Process?

Utica also contends that the Court of Appeals failed to scrutinize the underlying judgment to ensure that the consensual stipulations of the parties did not infringe on Utica's due process rights. Specifically, Utica complains that none of the parties clearly admitted liability on the negligent training or supervision claim stated in Count III of the petition. Utica argues that paragraph 9, which purports to stipulate as to what a finder of fact would find, is invalid and insufficient to support the judgment against Hunan.

Utica raised this same argument in its motion to set aside the judgment. The district court denied the motion. The court's journal entry does not reflect its reasoning, and a transcript of the hearing was not included in the record on appeal.

The Court of Appeals rejected the argument, stating:

"Utica makes a good point with respect to the defendants' stipulation in paragraph 9, where they refuse to stipulate that Hunan negligently retained or supervised Chen, but stipulate that a finder of fact would nevertheless make such a finding by a preponderance of the evidence. A defendant's speculation as to how a judge or jury would decide a case, coupled with the defendant's refusal to admit wrongdoing, does not strike us as substantial competent evidence upon which a judge may rely to support his or her decision. Nevertheless, the stipulation in paragraph 8 provided other facts from which the trial court could draw all reasonable inferences. See *Kopp's Rug Co. v. Talbot*, 5 Kan. App. 2d 565, 571-72, 620 P.2d 1167 (1980) (although the stipulation concerning the completion of the house was not clear, it and the lien statement raised a reasonable inference that the subcontractor completed its work)." Slip op. at 6.

Utica argues this conclusion is questionable given that the stipulation in paragraph 8 says nothing about whether Hunan knew or should have known of Chen's unsafe driving habits, stating only that on many occasions military policemen had observed Chen operating his vehicle in an unsafe manner and too fast for conditions.

Utica's argument ignores the reasonable inferences which the trial court could draw from the evidence and consider before entering judgment. There may not have been direct evidence that

Hunan knew of Chen's unsafe driving, but liability can be established by showing that the employer should have known of the employee's incompetence or unfitness. See *Prugue v. Monley*, 29 Kan. App. 2d 635, 639, 28 P.3d 1046 (2001). The stipulation in paragraph 8 was sufficient to allow the trial court to draw the reasonable inference that Hunan, as the employer dispatching a driver for various deliveries, should have known of Chen's unsafe driving habits. In reaching the consent agreement, the parties, in paragraph 9, recognized that a trier of fact would probably reach this conclusion. We agree that paragraph 9 did not bind the trial court to reach the conclusion; but the parties' agreement does indicate the reasonableness of the conclusion reached by the trial court in entering judgment on the claim of negligent supervision.

More critical to the outcome of the issue is the Court of Appeals' ruling that Utica was bound by the underlying judgment because it failed to provide a defense and was in privity with its insured, citing *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 732 P.2d 741 (1987). Slip op. at 6-7. *Harmon* states:

"The mutuality rule provides that a person who is a party or privy to a party to an action in which a valid judgment . . . is rendered is bound by or entitled to claim the benefits of an adjudication upon any matter decided in the action. Three questions must be asked in considering whether mutuality applies: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the claim is asserted a party or in privity with a party to the prior adjudication? [Citation omitted.]

"Patrons candidly requests this court to create an exception to the mutuality requirement of collateral estoppel for insurance companies. Because Patrons was in privity with a party . . . in the wrongful death action, it was bound by that judgment. An exception to the rule would allow Patrons, the insurer, to refuse to defend its insured in the original action and, if the insured lost, would allow the insurer to relitigate the same issue against its insured in a subsequent action.

"We are not inclined to create a special exception to the mutuality requirement of collateral estoppel for insurance companies." 240 Kan. at 710-11.

In *Neville v. Hennigh*, 214 Kan. 681, 522 P.2d 443 (1974), this court recognized that a consent judgment has collateral estoppel effect. Thus, the doctrine of collateral estoppel applies.

In addition, as the Court of Appeals noted, only a void judgment is subject to collateral attack. Slip op. at 7-8 (citing *Bank IV Wichita v. Plein*, 250 Kan. 701, 708, 830 P.2d 29 [1992]). A judgment is void when the district court lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process. *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1024, 58 P.3d 1284 (2002).

Utica does not contest this portion of the Court of Appeals' ruling, conceding that an insurance carrier can collaterally attack a judgment in garnishment only if the judgment is void. Utica argues, however, that the underlying judgment in this case was void because the trial court's reliance on an insufficient stipulation violated due process.

The basic elements of due process include notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Bethany Medical Center v. Niyazi*, 18 Kan. App. 2d 80, 82, 847 P.2d 1341 (1993). Utica does not argue that it lacked notice or an opportunity to be heard. Its challenge to the sufficiency of the district court's findings does not implicate due process.

Utica also urges this court to adopt standards requiring a trial court to examine consent judgments to ensure they are free from fraud or collusion and have a reasonable good faith factual basis. See, *e.g.*, *Pruyn v. Agricultural Ins. Co.*, 36 Cal. App. 4th 500, 42 Cal. Rptr. 2d 295 (1995); *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982). In this case, there is nothing in the record to suggest fraud or collusion in the trial or judgment. The stipulations, although narrowly drawn, are sufficient to support the judgment entered in this case.

As the Court of Appeals noted:

"Utica had the means by which it could have protected itself. It chose not to enter the fray in defense of Hunan or to file a declaratory judgment action to define its contractual obligations. This choice was made after the filing of *Marquis*, which should have put Utica on notice [regarding notice]." Slip op. at 7.

Procedural safeguards were adequate and available to Utica. As stated before, the law regarding coverage was clear. Thus, on the record before us, we see no basis to expand the procedural safeguards which were available to Utica.

Affirmed.

BEIER, J., not participating.

BRAZIL, S.J., assigned.

BRAZIL, S.J.: I respectfully dissent. I would adopt the well-reasoned concurring and dissenting opinion written by Justice Larson in *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 335-40, 961 P.2d 1213 (1998). The majority opinion in this case perpetuates an inconsistency in Kansas law. See *Brumley v. Lee*, 265 Kan. 810, 825-34, 963 P.2d 1224 (1998) (Six, J., dissenting); *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 962 P.2d 515 (1998). We should not blindly adhere to the doctrine of stare decisis in light of such an inconsistency, especially where the authority underlying *Marquis* has weakened.

MCFARLAND, C.J., and GERNON, J., join in the foregoing dissent.