IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 105,982

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH M. BUSER,
*Appellant*.

SYLLABUS BY THE COURT

1.

Article I, § 10 of the United States Constitution provides that no state shall pass any ex post facto law. Ex post facto laws include retroactively applied legislation that make more burdensome the punishment for a crime, after its commission.

2.

The constitutional prohibition on ex post facto laws applies only to penal statutes.

3.

To determine whether the retroactive application of a statutory scheme violates the Ex Post Facto Clause, a court first determines the legislature's intention. If a statutory scheme was intended to be punitive, it cannot be applied retroactively under any circumstances.

4.

If the legislature intended to enact a regulatory scheme that is civil and nonpunitive, the next inquiry is whether the statutory scheme is so punitive either in

1

purpose or effect as to negate the State's intent to deem it civil. If a statutory scheme is punitive in effect, the Ex Post Facto Clause prohibits its application retroactively.

5.

The Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.,* as amended in 2011, is punitive in effect, and the amended statutory scheme cannot be applied retroactively to any sex offender who committed the qualifying crime prior to July 1, 2011.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 15, 2013. Appeal from Mitchell District Court; KIM W. CUDNEY, judge. Opinion filed April 22, 2016. Judgment of the Court of Appeals reversing and remanding the district court's registration judgment is reversed. Judgment of the district court is reversed.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Mark J. Noah*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Joseph M. Buser seeks review of the Court of Appeals' holding that the 2011 amendments to the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, can be applied retroactively to his 2009 conviction without violating the Ex Post Facto Clause of the United States Constitution (hereafter Ex Post Facto Clause). Because KORA's statutory scheme after the 2011 amendments is so punitive in effect as to negate the implied legislative intent to deem it civil, we hold that the Ex Post Facto Clause precludes the retroactive application of the amended statutory scheme to any sex offender

2

who committed the qualifying offense prior to July 1, 2011. Accordingly, we reverse the Court of Appeals and hold that the time period in which Buser is required to register is 10 years from his release from prison, pursuant to the provisions of K.S.A. 22-4906(a).

FACTUAL AND PROCEDURAL OVERVIEW

In February 2009, when he was 21 years old, Buser began dating a 15-year-old girl. The couple began having sex 2 months later, and the following month, in May 2009, the girl's mother reported the couple's sexual relationship to the police. The police investigation led to charges being filed against Buser, including one count of indecent liberties with a child and six counts of aggravated indecent liberties with a child. Ultimately, Buser pled no contest to one count of indecent liberties with a child. In connection with his plea, Buser was advised of the KORA requirement to register as a sex offender.

The district court accepted Buser's plea and sentenced him to 52 months' imprisonment and lifetime post-release supervision. The district court also ordered Buser to register as an offender under KORA for his lifetime because the court found that this was Buser's second conviction, apparently based upon a prior juvenile adjudication.

In Buser's direct appeal to the Court of Appeals, he argued that the district court erred in counting his prior juvenile adjudication as a first conviction for purposes of KORA because K.S.A. 22-4906 refers to "convictions," not "adjudications." The State agreed that Buser's juvenile adjudication could not count as a prior conviction to enhance the time period of registration. But the State contended that under the subsequently enacted 2011 amendments to KORA, Buser's registration term as a first-time offender had been increased to 25 years. Buser's reply brief argued that he should only be subject to the 10-year registration term in effect when he committed his crime, because

3

retroactively imposing a longer registration term based upon the 2011 amendments to KORA violated the Ex Post Facto Clause.

The Court of Appeals found that the State was correct in conceding that the district court erred in imposing a lifetime registration term. *State v. Buser*, No. 105,982, 2013 WL 1149655, at *6 (Kan. App. 2013) (unpublished opinion). But the panel also found that the 2011 amended registration term of 25 years could be applied retroactively to Buser. 2013 WL 1149655, at *9. Accordingly, the Court of Appeals remanded the case to the district court for "correction of the duration of time Buser must register under KORA." 2013 WL 1149655, at *10.

Buser petitioned this court for review on the sole issue of whether the Court of Appeals violated the Ex Post Facto Clause when it held that Buser was required to register under KORA for 25 years instead of 10 years. This court granted Buser's petition for review, together with two other cases with related issues: *Doe v. Thompson*, 304 Kan. ___, ___ P.3d ___ (No. 110,318, this day decided), and *State v. Redmond*, 304 Kan. ___, ___ P.3d ___ (No. 110,280, this day decided).

RETROACTIVE APPLICATION OF KORA 2011 AMENDMENTS

The 2011 version of KORA's statutory scheme purported to apply to any person who was convicted of any sexually violent crime on or after April 14, 1994. K.S.A. 2011 Supp. 22-4902(b) (defining "sex offender"). Indecent liberties with a child is statutorily designated as a "sexually violent crime." K.S.A. 2011 Supp. 22-4902(c)(2). Accordingly, Buser's 2009 conviction for a sexually violent crime made him subject to the additional and enhanced provisions of the 2011 statutory scheme, including the increased time period for a first-time offender.

4

But legislative acts must comport with our federal and state constitutions, and Article I, § 10, of the United States Constitution provides, in relevant part, that "[n]o State shall . . . pass any . . . ex post facto Law." One category of ex post facto laws is ""any statute . . . which makes more burdensome the punishment for a crime, after its commission."'" *State v. Todd*, 299 Kan. 263, 277, 323 P.3d 829 (2014) (quoting *Beazell v. Ohio*, 269 U.S. 167 169-70, 46 S. Ct. 68, 70 L. Ed. 2d 216 [1925]). Yet, "[t]he constitutional prohibition on ex post facto laws applies only to penal statutes." *State v. Myers*, 260 Kan. 669, 677, 923 P.2d 1024 (1996). Consequently, the question of whether the 2011 version of KORA can be constitutionally applied retroactively to Buser will be resolved by determining whether the amended statutory scheme is punitive.

*Standard of Review*

"When the application of a statute is challenged on constitutional grounds, this court exercises an unlimited, de novo standard of review. *State v. Myers*, 260 Kan. 669, 676, 923 P.2d 1024 (1996)." *State v. Cook*, 286 Kan. 766, 768, 187 P.3d 1283 (2008).

*Analysis*

In upholding the constitutionality of retroactively applying the 2011 KORA provisions, the Court of Appeals relied in part on this court's decision in *Myers*, as the panel determined it had been modified by the United States Supreme Court's subsequent holdings in *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). On review, Buser acknowledges the hurdles that those cases present, but he argues that his case is factually distinguishable in that the 2011 version of KORA is far more punitive in nature than the statutes reviewed in *Myers* and *Smith*. We agree.

5

State v. Myers

*Myers* considered whether a previous registration act, the Kansas Sex Offender Registration Act (KSORA), could be applied to a person who had committed the qualifying offense prior to the 1994 effective date of KSORA. See L. 1994, ch. 107, secs. 1-7. Myers claimed that the retroactive application of KSORA's reporting and disclosure requirements violated the Ex Post Facto Clause. The State conceded that KSORA was being retroactively applied to Myers but argued that the intent and purpose of KSORA was regulatory, rather than punitive, and the Ex Post Facto Clause did not apply.

The *Myers* court agreed with part of the State's argument, finding that while KSORA contained no express statement of legislative intent or purpose, "the legislative history suggests a nonpunitive purpose—public safety." 260 Kan. at 681. But *Myers'* analysis did not end with legislative intent. Rather, the *Myers* court recognized that it had to make the additional determination of "whether the 'statutory scheme was so punitive either in purpose or effect as to negate that [legislative] intention.' *United States v. Ward*, 448 U.S. 242, 248-49, 65 L. Ed. 2d 742, 100 S. Ct. 2636 (1980)." 260 Kan. at 681.

Ultimately, *Myers* opined that KSORA's registration requirements were remedial and could apply retroactively to Myers. In contrast, the court held that "KSORA's disclosure provision must be considered punishment." 260 Kan. at 699. While holding that the legislative aim was not to punish and retribution was not an intended purpose of the legislation, *Myers* reasoned "that the repercussions, despite how they may be justified, are great enough under the facts of this case to be considered punishment." 260 Kan. at 699. Further, *Myers* opined that the unrestricted public access to the registry was excessive and went beyond what was necessary to promote public safety. 260 Kan. at 699. Consequently, *Myers* declared that "[t]o avoid the ex post facto characterization, public access [to registration information] should be limited to those with a need to know

6

the information for public safety purposes" and that those authorized to access the information should only use it for public safety purposes. 260 Kan. at 700.

The Court of Appeals opined that it was duty-bound to follow *Myers*' holding that the registration requirements of KORA's predecessor did not violate the Ex Post Facto Clause, but that it was also duty-bound to follow the United States Supreme Court's holdings in *Smith*. Without explicitly stating as much, the panel suggested that *Myers*' ruling on this State's disclosure provisions had been overruled by *Smith*. *Buser*, 2013 WL 1149655, at *8-9.

Smith v. Doe

*Smith* considered an Ex Post Facto Clause challenge to the Alaska Sex Offender Registration Act (ASORA). Although it was the first time the high court had considered the precise issue, the Supreme Court applied its well-established framework of (1) determining whether the legislature's intention was to enact a "a regulatory scheme that is civil and nonpunitive" and, if so, (2) "examin[ing] whether the statutory scheme is '"so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil."'" 538 U.S. at 92 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S. Ct. 2072, 138 L. Ed. 2d 501 [1997]). This framework is often referred to as the "intent-effects" test. See, *e.g.*, *Moore v. Avoyelles Correctional Center*, 253 F.3d 870, 872 (5th Cir. 2001). Although *Myers* did not label its analysis, it used the same framework.

On the intent component, *Smith* held that the Alaska Legislature's intent "was to create a civil, nonpunitive regime." 538 U.S. at 96. For the effects part of the test, the Court utilized the factors identified in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 544, 9 L. Ed. 2d 644 (1963), but noted that "[b]ecause the *Mendoza-Martinez* factors are designed to apply in various constitutional contexts, . . . they are

7

'neither exhaustive nor dispositive,' [citations omitted], but are 'useful guideposts.'" 538 U.S. at 97. The Court explained:

> "The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: [1] has been regarded in our history and traditions as a punishment; [2] imposes an affirmative disability or restraint; [3] promotes the traditional aims of punishment; [4] has a rational connection to a nonpunitive purpose; or [5] is excessive with respect to this purpose." *Smith*, 538 U.S. at 97.

*Smith* summarily dismissed the remaining two *Mendoza-Martinez* factors— "whether the regulation comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime"—by declaring those factors carried "little weight." 538 U.S. at 105.

Under the first factor—whether the regulatory scheme has been regarded in our history and traditions as a punishment—*Smith* noted that sex offender registration and notification statutes "'are of fairly recent origin,' [citation omitted] which suggests that the statute was not meant as a punitive measure, or, at least, that it did not involve a traditional means of punishing." 538 U.S. at 97 (quoting *Doe I v. Otte*, 259 F.3d 979, 989 [9th Cir. 2001]). The Court rejected the argument that the notification provisions resembled shaming punishments of the colonial period by asserting that shaming, humiliation, and banishment punishments of old involved more than the dissemination of accurate information, which is all that ASORA did. The *Smith* Court was not swayed by the fact that Alaska posted the registration information on the Internet because, in the Court's view, a member of the public visiting the state's website was analogous to that person visiting the official criminal records archive. 538 U.S. at 99.

Under the second factor, *Smith* found that ASORA had not imposed an affirmative disability or restraint on Doe because he was not physically restrained in any manner. 538

8

U.S. at 100. Moreover, the Court rejected the notion that the reporting provisions were akin to probation or parole, partially because the subsequent reporting did not have to be made in person.

Under the third factor—whether the regulatory scheme promotes the traditional aims of punishment—the Court described those aims as retribution and deterrence. The Court appeared to concede that ASORA might deter future crimes, but it opined that if the mere presence of deterrent purpose renders a government program "criminal," it "'would severely undermine the Government's ability to engage in effective regulation.'" *Smith*, 538 U.S. at 102 (quoting *Hudson v. United States*, 522 U.S. 93, 105, 118 S. Ct. 488, 139 L. Ed. 2d 450 [1997]). It then held that the act's registration obligations were not retributive based upon the differing duration of reporting for different categories of offenders because these measures were "reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." 538 U.S. at 102.

*Smith* declared the fourth factor—the rational connection to a nonpunitive purpose—to be the most significant factor. The Court summarily rejected the respondent's argument that ASORA was not "'narrowly drawn to accomplish the stated purpose,'" reasoning that a "statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." 538 U.S. at 103.

When assessing the fifth factor—whether the regulatory scheme is excessive with respect to its purpose—*Smith* opined that it need not determine "whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." 538 U.S. at 105. The Court concluded that ASORA's application to all convicted sex offenders, without any individualized assessment of the offender's dangerousness, did not render the act punitive. Finding that the risk of recidivism by sex

offenders was "'frightening and high,'" the Court held that "[i]n the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions without violating the prohibitions of the *Ex Post Facto* Clause." 538 U.S. at 103-04.

Relying on empirical research on child molesters, the Court also held that the duration of ASORA's reporting requirements was not excessive because "'most reoffenses do not occur within the first several years after release,' but may occur 'as late as 20 years following release.'" *Smith*, 538 U.S. at 104 (quoting National Institute of Justice, R. Prentky, R. Knight, & A. Lee, U.S. Dept. of Justice, Child Sexual Molestation: Research Issues 14 [1997]).

Finally, the Court held that the widespread dissemination of the registration information was not excessive, instead finding that the "notification system is a passive one: An individual must seek access to the information." 538 U.S. at 105. The Court also determined that making the registry information available throughout the state was not excessive in light of population mobility, citing to a study indicating that 38% of recidivist sex offenses took place in different jurisdictions than where the previous offense was committed. 538 U.S. at 105.

Having determined that the respondents had failed to show "that the effects of the law negate Alaska's intention to establish a civil regulatory scheme," the *Smith* majority declared that the act was nonpunitive and that its retroactive application did not violate the Ex Post Facto Clause. 538 U.S. at 105-06.

10

*Statutory Differences*

In his petition for review, Buser asserts that the enhanced requirements of KORA, after the 2011 amendments, render that statutory scheme much more punitive than the schemes involved in either *Myers* or *Smith*. Consequently, Buser contends that working the current statutory scheme through the *Mendoza-Martinez* factors would yield a different result.

We engaged in that endeavor in *Doe v. Thompson*, 304 Kan. ___, ___ P.3d ___ (No. 110,318, this day decided). There, we listed the significant differences between the 2011 KORA and the ASORA reviewed in *Smith*. Those differences included the following: KORA applies to a broader group of offenders; KORA requires frequent in-person reporting regardless of whether registration information has changed since the last reporting; KORA requires a longer registration period for some first-time offenders; KORA requires additional registration information; KORA requires changed information to be reported in person within 3 days; KORA requires additional information to be disseminated to the public; KORA imposes potentially costly registration fees; KORA requires advance notice for travel outside the United States; KORA requires annual driver's license renewal and offenders subject to KORA must have a distinguishing number on their licenses; parents subject to KORA must disclose that status in any proceeding determining child custody, residency, and parenting time; and KORA imposes severe, person felony sanctions for violating any KORA provision. *Thompson*, slip op. at 32-35.

Reviewing KORA, as amended in 2011, in light of the *Mendoza-Martinez* factors, we first determined that the statutory scheme resembled traditional forms of punishment by being akin to public shaming and by replicating the circumstance of being on probation or parole. *Thompson*, slip op. at 37-38. The latter circumstance also imposed an

11

affirmative disability or restraint on the offender, as did the difficulties in obtaining employment and housing caused by KORA. Moreover, the financial obligations were punitive in effect, when viewed from an offender's perspective. Slip op. at 39-40. Next, we determined that the current KORA had a deterrent effect and was retributive in character, before opining that KORA was not rationally connected to the nonpunitive purpose of public safety. In other words, the statutory scheme is excessive in relation to its regulatory purpose. Slip op. at 43. Consequently, we determined that the 2011 version of KORA is punitive in effect and that the amended statutory scheme cannot be applied retroactively to any sex offender who committed the qualifying crime prior to July 1, 2011. Slip op. at 44.

Given that Buser committed his crime in 2009, he cannot be subjected to the subsequently enacted 25-year registration period in the 2011 version of KORA without violating the Ex Post Facto Clause. The Court of Appeals decision to the contrary is reversed. Buser will be subject to the KORA provisions that were in effect in 2009.

Reversed.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

\* \* \*

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 105,982 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.

BILES, J., dissenting:  I dissent from the majority's decision in this case for the reasons more fully stated in my dissent in *Doe v. Thompson*, 304 Kan. ___, ___ P.3d ___ (No. 110,318, this day decided). As explained there, I believe the majority asks and answers the wrong question. Whether the Kansas Offender Registration Act (KORA) as amended in 2011 violates the Ex Post Facto Clause of the United States Constitution is entirely a federal question. We should apply the abundant federal caselaw where possible to inform the analysis. The majority's approach disregards that caselaw.

As explained in my *Thompson* dissent, the applicable federal caselaw considers similar burdens under other offender registration schemes. It compels me to conclude that the 2011 KORA amendments do not violate the United States Constitution's Ex Post Facto Clause and the United States Supreme Court would so hold. I would affirm the Court of Appeals decision for the reasons I explain in *Thompson*.

NUSS, C.J., and LUCKERT, J., join in the foregoing dissent.

13