IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,759

STATE OF KANSAS,
*Appellee*,

v.

LONNIE A. DAVIDSON,
*Appellant*.

SYLLABUS BY THE COURT

Mandatory lifetime postrelease registration under the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., does not constitute punishment for purposes of applying provisions of the Ex Post Facto Clause of the United States Constitution.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 2, 2019. Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed September 17, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

PER CURIAM: Lonnie A. Davidson was convicted of aggravated criminal sodomy in 2002. As a result of this conviction, he was required to register as a sex offender for life under the Kansas Offender Registration Act (KORA). See K.S.A. 2002 Supp. 22-4906(c).

1

After he failed to register in April 2017, the State charged Davidson with violating KORA, a severity level 5 person felony. Davidson moved to dismiss the charge, alleging that he was told at the time of his aggravated criminal sodomy conviction that he would be required to register under KORA for 10 years but the registration requirement was later increased to life. Davidson argued that retroactive application of KORA's registration requirements violated ex post facto and due process provisions and constituted cruel and unusual punishment under the United States Constitution. Relying on our decisions in *State v. Petersen-Beard*, 304 Kan. 192, 377 P.3d 1127 (2016), and *State v. Reed*, 306 Kan. 899, 399 P.3d 865 (2017), holding that KORA registration requirements are not punitive, the district court denied the motion. A jury later convicted Davidson of failing to register. The district court denied Davidson's request for a departure sentence and imposed a 32-month prison term followed by 24 months of postrelease supervision.

Davidson appealed his conviction to the Court of Appeals, arguing that retroactive application of KORA violates the federal constitutional prohibition against ex post facto punishment, infringes on his right to due process, and constitutes cruel and unusual punishment. The panel deemed Davidson's due process and cruel and unusual punishment claims to be waived and abandoned for failing to brief the issues. Bound by our decisions in *Petersen-Beard* and *Reed*, the panel held the sex offender registration scheme was not punitive in intent or effect for purposes of an ex post facto analysis and affirmed Davidson's conviction. *State v. Davidson*, No. 119,759, 2019 WL 3519064, at *1-2 (Kan. App. 2019) (unpublished opinion). Davidson filed a petition for review, which we granted under K.S.A. 20-3018(b). We exercise jurisdiction pursuant to K.S.A. 60-2101(b).

ANALYSIS

*Due process and cruel and unusual punishment*

As he did with the panel below, Davidson generally asserts that KORA's retroactive application violates due process and constitutes cruel and unusual punishment. But aside from a single line in the introductory paragraph of his petition for review, Davidson provides no argument in support of these additional claims. Accordingly, we deem the due process and cruel and unusual punishment arguments waived and abandoned. See *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (a point raised incidentally but not argued is deemed abandoned).

*Ex post facto*

Davidson argues the KORA statutory scheme is punitive and, as a result, its retroactive application violates the Ex Post Facto Clause. "The constitutionality of a statute is a question of law over which this court exercises plenary review." *Petersen-Beard*, 304 Kan. at 194. We begin with the presumption that KORA is constitutional. As we stated in *Petersen-Beard*:

> "'We presume statutes are constitutional and must resolve all doubts in favor of a statute's
> validity.' *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014). 'It is not the duty of this
> court to criticize the legislature or to substitute its view on economic or social policy; it is
> the duty of this court to safeguard the constitution.' *State ex rel. Six v. Kansas Lottery*,
> 286 Kan. 557, 562, 186 P.3d 183 (2008)." 304 Kan. at 194.

Article I, §10 of the United States Constitution states: "No State shall . . . pass any . . . ex post facto Law." Any statute "'which imposes a punishment for an act which was

3

not punishable at the time it was committed; or imposes additional punishment to that then prescribed'" is prohibited as ex post facto. *Weaver v. Graham*, 450 U.S. 24, 28, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981) (quoting *Cummings v. Missouri*, 71 U.S. [4 Wall.] 277, 325-26, 18 L. Ed. 356 [1866]).

A plaintiff may raise either a facial or an as-applied challenge under the Ex Post Facto Clause. *Garner v. Jones*, 529 U.S. 244, 255, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000). Davidson challenges the retroactive application of KORA's registration requirements to him, which he claims increased his period of registration from 10 years to life.

We apply an "intent-effects" test to analyze whether a statutory provision violates the Ex Post Facto Clause. Under this test, the court first determines whether the Legislature intended the statute to establish a civil proceeding. *Smith v. Doe*, 538 U.S. 84, 92, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003); *Petersen-Beard*, 304 Kan. at 194. If the Legislature intended to impose punishment, the inquiry ends, and the provision is deemed an ex post facto law. But if the Legislature intended to enact a civil and nonpunitive regulatory scheme, the court then must examine whether the statutory scheme is so punitive–either in purpose or effect–as to negate the Legislature's civil intent. *Smith*, 538 U.S. at 92; *Petersen-Beard*, 304 Kan. at 194.

In 2003, the United States Supreme Court applied the "intent-effects" test in an ex post facto challenge to the Alaska Sex Offender Registration Act (ASORA). The Court ultimately held ASORA was nonpunitive and therefore its retroactive application did not violate the Ex Post Facto Clause. *Smith*, 538 U.S. at 105-06. The Court first concluded that the Alaska Legislature's intent "was to create a civil, nonpunitive regime." 538 U.S. at 96. The Court then determined that the statute's registration and notification requirements were not sufficiently punitive to overcome this legislative intent. As a

4

result, the Court held that ASORA's retroactive application did not violate the Ex Post Facto Clause of the United States Constitution. 538 U.S. at 105-06. Interestingly, the Alaska Supreme Court later used the same intent-effects test utilized by the *Smith* Court to find ASORA violated the Ex Post Facto Clause of the *Alaska state constitution*. See *Petersen-Beard*, 304 Kan. at 224 (Johnson, J., dissenting). The Alaska Supreme Court concluded:

> "Because ASORA compels (under threat of conviction) intrusive affirmative conduct, because this conduct is equivalent to that required by criminal judgments, because ASORA makes the disclosed information public and requires its broad dissemination without limitation, because ASORA applies only to those convicted of crime, and because ASORA neither meaningfully distinguishes between classes of sex offenses on the basis of risk nor gives offenders any opportunity to demonstrate their lack of risk, ASORA's effects are punitive. We therefore conclude that the statute violates Alaska's ex post facto clause." *Doe v. State*, 189 P.3d 999, 1019 (Alaska 2008).

Other states similarly have relied on their state constitutions to prohibit retroactive application of sex offender registration statutes. See *Wallace v. State*, 905 N.E.2d 371, 377-78, 384 (Ind. 2009); *Doe v. Dept. of Public Safety and Correctional Services*, 430 Md. 535, 547-48, 553, 62 A.3d 123 (2013); *State v. Williams*, 129 Ohio St. 3d 344, 347-49, 952 N.E.2d 1108 (2011); *Starkey v. Oklahoma Dept. of Corrections*, 305 P.3d 1004, 1030 (2013).

But Kansas does not have a specific Ex Post Facto Clause in our state Constitution. *State v. Todd*, 299 Kan. 263, 276, 323 P.3d 829 (2014). As a result, this court is bound by the United States Supreme Court's interpretation of the United States Constitution. See *Howlett v. Rose*, 496 U.S. 356, 367-69 n.16, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990) (The Supremacy Clause declares federal law the "supreme law of the land," and state courts must enforce it "in the absence of a valid excuse."). Accordingly,

our inquiry becomes whether KORA, as amended in 2011, is sufficiently distinct from ASORA that it mandates a different result under the federal Constitution.

As Davidson acknowledges, this court addressed the punitive nature of KORA in four opinions filed on the same day in 2016. In three of the opinions, a majority of the court held that KORA, as amended in 2011, was punitive in effect and that its retroactive application to any sex offender who committed a registerable offense before July 1, 2011, violated the Ex Post Facto Clause. *Doe v. Thompson*, 304 Kan. 291, 327-28, 373 P.3d 750 (2016); *State v. Redmond*, 304 Kan. 283, 289-90, 371 P.3d 900 (2016); and *State v. Buser*, 304 Kan. 181, 190, 371 P.3d 886 (2016).

The fourth opinion, *Petersen-Beard*, considered whether KORA, as amended in 2011, constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. To resolve this issue, the majority performed a traditional ex post facto analysis because the first step of an Eighth Amendment inquiry is to determine whether the practice at issue constitutes punishment. 304 Kan. at 196. A different majority—due to a change in the court's composition since *Thompson*, *Redmond*, and *Buser* were argued—ultimately ruled that KORA was nonpunitive. The majority first found that the Legislature did not intend for KORA's lifetime sex offender registration scheme to be punitive. 304 Kan. at 195. The majority then determined that the burdens imposed by KORA's registration requirements were not so onerous as to constitute punishment for purposes of applying the federal Constitution and therefore could not violate federal or state constitutional prohibitions against cruel and unusual punishment. 304 Kan. at 208-09. In so holding, the majority overruled *Thompson*, *Redmond*, and *Buser*, adopting the reasoning behind the dissent in *Thompson* "in toto" and "quot[ing] liberally" from it in reaching its decision. 304 Kan. at 197-209. This same majority later "explicitly extend[ed] the holding of *Petersen-Beard* to apply to ex post facto challenges." *Reed*, 306 Kan. at 904.

6

Davidson asks this court to overturn *Petersen-Beard* to find that KORA is punitive and therefore its retroactive application violates the Ex Post Facto Clause. In arguing that *Petersen-Beard* was wrongly decided, Davidson relies mainly on the majority analysis and holding in *Thompson*, 304 Kan. at 306-28. Davidson, like the *Thompson* majority did, points out several differences between the Alaska registration scheme analyzed in *Smith* and the stricter requirements of KORA. Davidson generally suggests that the *Petersen-Beard* majority failed to fully examine the effects of KORA's entire statutory scheme. See *Thompson*, 304 Kan. at 317-20.

But Davidson presents essentially the same arguments this court considered and rejected in *Petersen-Beard*. He presents no new evidence or analysis. Though not discussed by Davidson, the only change that has occurred since *Petersen-Beard* is that three new justices have replaced three retired justices on the court. But "we should be highly skeptical of reversing an earlier decision where nothing has changed except the composition of the court." *State v. Marsh*, 278 Kan. 520, 577, 102 P.3d 445 (2004) (McFarland, C.J., dissenting).

In considering Davidson's request, we keep in mind that "[w]e do not overrule precedent lightly and must give full consideration to the doctrine of stare decisis." *State v. Sherman*, 305 Kan. 88, 107, 378 P.3d 1060 (2016). "'The application of stare decisis ensures stability and continuity—demonstrating a continuing legitimacy of judicial review. Judicial adherence to constitutional precedent ensures that all branches of government, including the judicial branch, are bound by law.'" *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004) (quoting *Samsel v. Wheeler Transp. Servs., Inc.*, 246 Kan. 336, 356, 789 P.2d 541 [1990], *overruled on other grounds by Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 [1991]). True, stare decisis "is not a rigid inevitability but a prudent governor on the pace of legal change." *State v. Jordan*, 303

7

Kan. 1017, 1021, 370 P.3d 417 (2016). But this court generally will follow its precedent unless "'clearly convinced [that the rule] was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *Sherman*, 305 Kan. at 108 (quoting *Simmons v. Porter*, 298 Kan. 299, 304, 312 P.3d 345 [2013]).

The determinative factor in deciding whether to overturn *Petersen-Beard* is whether KORA is punitive. *Petersen-Beard* held that it was not. 304 Kan. at 197. Davidson's reiteration of the majority analysis and holding in *Thompson* fails to clearly convince us that the holding in *Petersen-Beard* was "originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent." *Sherman*, 305 Kan. at 108. Accordingly, we reaffirm our holding in *Petersen-Beard* that KORA registration requirements are not punitive in purpose or effect. Accordingly, retroactive application of KORA provisions to Davidson does not violate the Ex Post Facto Clause of the United States Constitution.

Affirmed.

* * *

STANDRIDGE, J., concurring:  Based on principles of stare decisis as applied to the circumstances of this case, I join the majority's decision not to disturb *State v. Petersen-Beard*, 304 Kan. 192, 377 P.3d 1127 (2016), which held that KORA registration requirements are not punitive. In my opinion, reversing a decision solely because of a change in composition of the court would cause the people we serve to raise legitimate concerns about the court's integrity and the rule of law in the state of Kansas.

The legal principles supporting the doctrine of stare decisis are well established. "[S]tare decisis is a basic self-governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon 'an arbitrary discretion.'" *Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989). Stare decisis ensures that "the law will not merely change erratically," which in turn "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals." *Vasquez v. Hillery*, 474 U.S. 254, 265, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986).

In Kansas, "'once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.'" *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004) (quoting *Samsel v. Wheeler Transp. Servs., Inc.* 246 Kan. 336, 356, 789 P.2d 541 [1990], *overruled on other grounds by Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 [1991]). While this court is not inexorably bound by its own precedent, we should follow the law of earlier cases unless "'clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *Crist*, 277 Kan. at 715.

The only change that has occurred here is the replacement of former members of the court. I believe that a change in the membership of this court cannot, in and of itself, justify a departure from the basic principle of stare decisis. See *Payne v. Tennessee*, 501 U.S. 808, 850, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) (Marshall, J., dissenting) (change in court's personnel "has been almost universally understood *not* to be sufficient to warrant overruling a precedent"); *State v. Marsh*, 278 Kan. 520, 577, 102 P.3d 445

9

(2004) (McFarland, C.J., dissenting) ("[W]e should be highly skeptical of reversing an earlier decision where nothing has changed except the composition of the court."). Any other conclusion would send the message that, whenever there is a hotly contested issue in this court that results in a closely divided decision, anyone who disagrees with the decision and has standing to challenge it need only wait until a member of the original majority leaves the court to bring another challenge. In my view, that would be a very dangerous message to send. Stability in the law and respect for the decisions of the court as an institution, rather than a collection of individuals, is of critical importance in our legal system.

Indeed, even if the majority decision in *Petersen-Beard* were flawed, overruling it under these circumstances—where the only factor that has changed is the composition of the court—would inflict far greater damage on the public perception of the rule of law and the stability and predictability of this court's decisions than would abiding by the decision. See *Planned Parenthood of Southeastern Pa., v. Casey*, 505 U.S. 833, 854, 864, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992) (quoting *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 636, 94 S. Ct. 1895, 40 L. Ed. 2d 406 [1974] [Stewart, J., dissenting]) ("'A basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the [g]overnment. No misconception could do more lasting injury to this Court and to the system of law which it is our abiding mission to serve.'").

Based on principles of stare decisis as applied to the circumstances presented here—where the only change is in this court's composition—I join in the judgment of the court.

* * *

ROSEN, J., dissenting:  Consistent with my longstanding opinion that the Kansas offender registration requirements are punitive, I dissent from today's decision. My observations regarding the punitive aspects of KORA are once again explained, this time in greater detail, in my dissent in *State v. N.R.*, 314 Kan. __ (No. 119,796, this day decided).

As I pointed out in my dissent in *State v. Stoll*, 312 Kan. 726, 737-38, 480 P.3d 158 (2021), I stood with the majority of this court and its position that the registration requirements constitute punishment in *State v. Redmond*, 304 Kan. 283, 371 P.3d 909 (2016), *State v. Buser*, 304 Kan. 181, 371 P.3d 886 (2016), *Doe v. Thompson*, 304 Kan. 291, 373 P.3d 750 (2016), and *State v. Charles*, 304 Kan. 158, 372 P.3d 1109 (2016). When this holding was overturned, I joined two of my colleagues in dissent in *State v. Petersen-Beard*, 304 Kan. 192, 377 P.3d 1127 (2016). In *State v. Shaylor*, 306 Kan. 1049, 1053, 400 P.3d 177 (2017), *State v. Meredith*, 306 Kan. 906, 914, 399 P.3d 859 (2017), and *State v. Huey*, 306 Kan. 1005, 1010, 399 P.3d 211 (2017), my colleagues and I reiterated our fervent opinion that these requirements are punitive. See also *State v. Perez-Medina*, 310 Kan. 525, 541, 448 P.3d 446 (2019) (Johnson, J., concurring and dissenting); *State v. Marinelli*, 307 Kan. 768, 796, 415 P.3d 405 (2018) (Rosen, J., dissenting); *State v. Rocheleau*, 307 Kan. 761, 767, 415 P.3d 422 (2018) (Beier, J., dissenting).

I opine in *N.R,* and emphasize it here, that it is time for this court to join the ranks of the many other courts that have rightfully recognized the punitive nature of registration requirements. Slip op. at 38 (citing *Does #1-5 v. Snyder*, 834 F.3d 696, 705 [6th Cir. 2016]; *People v. Betts*, No. 148981, 2021 WL 3161828, at *12 [Mich. 2021]; *Starkey v. Oklahoma Dep't of Corr.*, 305 P.3d 1004 [Okla. 2013]; *Doe v. Dep't of Pub. Safety &*

*Corr. Servs*., 430 Md. 535, 568, 62 A.3d 123 [2013]; *Wallace v. State*, 905 N.E.2d 371, 379-84 [Ind. 2009]).

Today, I dissent alone. But I stand firm in my belief that the oppressive and onerous requirements of offender registration are punitive. This case presents just another prime example. Consequently, I conclude the retroactive application of the registration requirements to Davidson violated the Ex Post Facto Clause. See *Shaylor*, 306 Kan. at 1053 (Beier, J., dissenting). I would reverse Davidson's conviction.