NOT DESIGNATED FOR PUBLICATION

No. 128,128

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN ERIC POWELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Submitted without oral argument. Opinion filed March 6, 2026. Affirmed in part, reversed in part, sentences vacated, and case remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL and ATCHESON, JJ.

HILL, J.: Ryan Eric Powell appeals his convictions and sentences for two counts of aggravated battery and two counts of aggravated endangering a child.

In March 2022, while in his home in Manhattan, Powell shot his stepson, Marquis Mitchell, in his right buttock while Mitchell was on top of his sister, Shamiya Hill, Powell's stepdaughter. The bullet went through Mitchell and grazed Hill on the side of her right hip. Two young step-grandchildren—M.M., age 2, and J.P., age 3—were also in the room at the time of the shooting. The jury convicted Powell of the aggravated battery

1

of Mitchell, a severity level 4 person felony, and the aggravated battery of Hill, a severity level 8 person felony. The jury also convicted him of two counts of endangering a child, both severity level 9 person felonies.

Before sentencing, Powell moved for a downward durational departure sentence. The sentencing court granted Powell's motion and imposed a 118-month prison sentence for all four convictions, ordering that the sentences for the two aggravated endangering a child convictions be served consecutively to each other and to Powell's two other convictions. The sentencing court also found that Powell used a deadly weapon in the commission of his convictions, requiring that he register as a violent offender.

To us, Powell primarily contends that the State failed to present sufficient evidence to prove that he was not justified in his use of force to defend Hill from the attack of her brother, Mitchell—a defense of another claim. He also argues that the State did not make a clear election of which of his acts served as the basis for his aggravated endangering a child charges, thus casting doubt on the unanimity of the jury's verdict on those two counts. Finally, Powell claims five sentencing errors.

*Tempers flare and one shot wounds two during a family visit.*

For context, it is useful to know who was in Powell's home that day. Powell's wife, Shamada Powell, has children from a prior relationship. A.P., her teenage son, lives with his mother and Powell in Manhattan. When all of these events occurred, A.P. was apparently standing in a hallway. Shamada has two adult children, Mitchell and Hill, who both have children. Both of Shamada's children were visiting that day. Mitchell has a two-year-old son, M.M., with Odessey Moore, who came by to say goodbye to M.M. Hill's three-year-old son, J.P., was there visiting with his grandmother, Shamada. All of these people—except A.P., who was watching from the hallway—were present in the

2

same room when Powell entered and shot Mitchell and Hill. Each adult witness naturally had a unique point of view and offered unique impressions to the jury.

Essentially, the record reveals that when Mitchell and Moore began arguing about holding their son, M.M., Hill tried to intervene, and then Hill began to argue with Mitchell. Angry words became a physical altercation between brother and sister. Hill ended up on her back on the couch with Mitchell sitting on top of her with his hand on her throat. At this point, Shamada called for help from her husband, Powell, who was in another room wanting to stay out of the conflict. Powell came out with a gun and, without a word or trying to physically separate the two, approached Mitchell who was still on top of his sister, and shot Mitchell in the right buttock. The bullet passed through Mitchell and grazed Hill's hip.

The argument ended. The police were called. Brother and sister went to the hospital, and Powell went to jail.

Powell claimed immunity from prosecution based on his defense of another and sought dismissal of the case before trial. The trial court denied that motion. The matter proceeded to a jury trial, where several witnesses gave their version of the facts to the jury. The trial court instructed the jury on Powell's affirmative defense of others defense. But the jury found Powell guilty of both aggravated battery counts—the shooting of Mitchell and Hill and aggravated endangering M.M. and J.P., the two young children in the room.

Powell raises seven issues on appeal.

*Defense of another*

Powell maintains that he had a right to defend Hill from her brother's attack. He frames this issue as a failure of proof, contending that the State did not present sufficient evidence to overcome his defense of another claim. There is a passing comment in Powell's brief about the use of deadly force, but we hold that is irrelevant to this issue. We find neither party argued to the jury about the use of deadly force, and there is no request in this record from either party requesting any instruction about the use of deadly force. This case concerns excessive force.

Powell invoked the defense of another to his two aggravated battery charges. The trial court instructed the jury on the standard for the defense of another:

> "Mr. Powell claims his use of force was permitted as the defense of another person in Count 1.

> "Mr. Powell is permitted to use physical force against another person including using a weapon when and to the extent that it appears to him, and he reasonably believes, such physical force is necessary to defend someone else against the other person's imminent use of unlawful force. Reasonable belief requires both a belief by Mr. Powell and the existence of facts that would persuade a reasonable person to that belief.

> "When use of force is permitted as defense of someone else, there is no requirement to retreat."

We note that the court's instruction recognizes a subjective view of the reasonableness of the actions taken by Powell as well as an objective view of the facts. Essentially two questions are asked of the jury. First the subjective question—Was it reasonable for *Powell* to believe that shooting Mitchell was necessary to defend Hill?

4

And second, the objective question—Would a *reasonable person* share that belief as well?

In light of this instruction, the fundamental question raised in this appeal is whether the State presented sufficient evidence, viewed in a light most favorable to the State, to establish beyond a reasonable doubt that Powell did not have a valid defense of others defense and was thus guilty of aggravated battery against Mitchell. In turn, we must answer both the subjective and objective questions.

The resolution of this issue is straightforward because there is no uncertainty about the controlling law.

> "When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

*We hold that a rational jury could find Powell guilty of these two crimes.*

What strikes us from this record is the speed with which Powell acted. He came into the room, approached the two who were grappling, and within a few seconds shot Mitchell and Hill. One shot wounded two. He actually wounded the woman who, at trial, he claimed to be defending. Powell gave no warning, nor did he give Mitchell a command to get off Hill—in fact, Powell did not speak before shooting. He certainly did not try to pull Mitchell off his sister. Objectively, was this a reasonable defense of Hill? The jury answered no. We have no reason to disagree with the jury. Given this evidence and the record before us, we agree with the jury. A rational jury could reasonably conclude that Powell's defense of another failed. We will not set aside those guilty verdicts.

5

*Did the State properly elect what conduct led to Powell's two aggravated endangerment of a child convictions?*

In American jurisprudence, criminal verdicts must be unanimous. The right to a unanimous jury verdict in Kansas is guaranteed by statute. K.S.A. 22-3421; K.S.A. 22-3423(1)(d). When challenged on appeal, we are to determine whether the case presents a multiple acts issue, exercising unlimited review. *State v. Foster*, 290 Kan. 696, 713, 233 P.3d 265 (2010).

But crimes can often be committed in several ways and, because the law requires unanimous verdicts, a jury must unanimously agree on how an accused committed that crime. In cases where there may be more than one way to commit a crime, in order to prevent a jury unanimity error, juries can be instructed about their unanimity requirement in what is called a multiple acts instruction. Or, the State may choose which conduct of the defendant it relies on to prove its charge and, by argument, thus tell the jury of its choice.

Powell argues that, because the State did not elect, by word or deed, which conduct constituted his crimes of aggravated endangerment of M.M. and J.P., we must reverse his convictions for those two offenses. In his view, as it stands now, there is no assurance that his jury was unanimous. The State maintains that it made a valid election.

Essentially, this is a jury unanimity question. Frankly, had the trial court given a multiple acts jury unanimity instruction, this question would not be before us.

To resolve this problem, the State has a choice: Elect or instruct. If a case involves multiple acts, "either the State must have informed the jury which act to rely upon in its deliberations or the district court must have instructed the jury to agree on the specific criminal act to convict. The failure to elect or instruct is error." 290 Kan. at 713. If an

6

appellate court determines an error has occurred, the final step in the analysis is to decide "whether the error warrants reversal or was harmless." 290 Kan. at 713.

When we consider Powell's two child endangerment convictions, we consider two aspects of Powell's conduct. Did he commit these crimes when he fired this shot while he was close to those two children? According to one witness, Powell was within two steps of the children before he fired the gun. Or did he commit these crimes by waving the gun around while making threatening comments to the room *after* he shot?

The State maintains it indeed made a valid election, suggesting that its election came during its final closing argument, when a prosecutor said:

> "Aggravated Child Endangering is the charges of the two young children being in the same room after the shot was fired while the defendant was waving the gun around threatening other people in the room."

That seems clear, if that was all that was said. But, unfortunately, that was not all that was said. The State also seemed to argue to the jury that Powell endangered everyone who was in his living room when he shot Mitchell:

> "If anybody knows anything about firearms, once a bullet leaves that chamber, it can go anywhere. It can ricochet off of anything. So, I want you to determine when you're looking at some of these reckless instructions, . . . that you don't forget how a bullet can react because he had no idea where that shot would go. Like I said, I think it's fair to say that a bullet can go anywhere after the trigger of the gun is pulled."

At no point during its initial closing argument did the State tell the jury that it *could not* convict Powell of aggravated endangering a child charges based on a finding that he had endangered M.M. and J.P. by shooting Mitchell.

7

We note one incident during the trial that illustrates the fuzziness of the State's so-called election. During rebuttal closing argument, the State insinuated that its aggravated endangering charges were based on M.M. and J.P. being close to the living room couch on which Mitchell was shot.

Defense counsel objected to this argument and asserted, outside the jury's hearing, that it contradicted the State's elected theory of prosecution.

The district court neither granted nor overruled this objection. But the objection did prompt the State to clarify that it was emphasizing Powell's proximity to M.M. and J.P. while he was allegedly waving a gun, after shooting Mitchell. That was the statement we quoted above.

The law's command we follow is: Elect or instruct. See *Foster*, 290 Kan. at 713. Fuzzy statements made amidst a cascade of words offered up during a set of closing arguments are not a clear-cut election that gives guidance to a jury deciding these types of questions. The law requires exactness and clarity in these elections. Had the jury been instructed with the unanimity instruction, then a unanimous jury decides the matter, finding guilt as they find the facts.

Powell has a Constitutional right to a unanimous verdict. The State must prove under the clearly erroneous standard that these fuzzy arguments and the failure to instruct did not affect the two verdicts here. See *Foster*, 290 Kan. at 713. Because we are unconvinced, we overturn Powell's two convictions for child endangerment.

1.    *Criminal history score*

Powell's presentence investigation report listed his criminal history score as B, based on two prior person felony convictions for attempted burglary of a dwelling and

8

burglary. Powell did not object to the presentence investigation report, the criminal history score classification, or the prior convictions being counted for criminal history purposes. Accordingly, the sentencing court imposed Powell's sentence, calculating the presumptive sentence based on Powell's criminal history score of B.

Powell now argues, for the first time, that the sentencing court miscalculated his criminal history score and he is thus serving an illegal sentence. He contends that first the presentence investigation report and then the sentencing court erroneously classified his prior Atchison County burglary conviction as a person felony, instead of a nonperson felony. Attached to his appellate brief is a journal entry of conviction, dated December 17, 2003, to establish that his prior burglary conviction was a nonperson felony. Therefore, he had only one person felony and not two as listed in the presentence investigation report. He asks us to vacate his sentence and remand the case to the district court for resentencing.

In response, the State argues that because Powell failed to object to the prior conviction being included in his criminal history score calculation as a person felony, he cannot now claim that his criminal history score is wrong. The State also argues that there was no prejudicial error here because the sentencing journal entry attached to the State's appellate brief shows that the prior conviction was classified as a person felony, just as reflected in the presentence investigation report.

Because an illegal sentence may be reviewed at any time while a defendant is serving that sentence, we will review this claim. See K.S.A. 22-3504(a); *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

The dispute is now manifest. The journal entry of the Atchison County *plea* hearing attached to Powell's brief shows a nonperson felony conviction. The journal entry

of the *sentencing* hearing for that conviction attached to the State's brief shows Powell was sentenced for a person felony. Which is accurate?

One way to determine that accuracy is by comparison of journal entries. K.S.A. 21-6814(d) allows the State to counter an accused's proffered journal entry with journal entries establishing a lack of prejudicial error. That statute describes how such a comparison may be handled:

>"If an offender raises a challenge to the offender's criminal history for the first time on appeal, the offender shall have the burden of designating a record that shows prejudicial error . . . . In designating a record that shows prejudicial error, the offender may provide the appellate court with journal entries of the challenged criminal history that were not originally attached to the criminal history worksheet, and the state may provide the appellate court with journal entries establishing a lack of prejudicial error." K.S.A. 21-6814(d).

That was done in this appeal. Following these directions, both sides here present us competing journal entries concerning the same conviction. Ordinarily, we would hold that the sentencing journal entry controls because that is the documentation required for criminal history worksheets. But, here, there is a unique legal hurdle that must be cleared first due to the nature of Powell's convictions.

A statute dealing with the determination of criminal history scores mandates a distinction that is important here. K.S.A. 21-6811(d)(2) directs:

>"(d) Prior burglary adult convictions and juvenile adjudications will be scored for criminal history purposes as follows:
>
>. . . .
>
>"(2) as a prior *nonperson* felony if the prior conviction or adjudication was classified as a burglary as defined in K.S.A. 21-3715(b) or (c), prior to its repeal . . . .

10

"The facts required to classify prior burglary adult convictions and juvenile adjudications shall be established by the state by a preponderance of the evidence." (Emphasis added.)

Both journal entries show a violation of K.S.A. 21-3715(c). This law appears to control, but we are not, as an appeal court, able to make any further inquiry to the facts on this point. Thus, with the application of this statute, more information must be presented by the State to resolve the dispute, and the need for more information is our reason for vacating the sentence and ordering a remand for the district court to resolve when the case returns to it.

We thus vacate Powell's sentence and remand this issue to the district court to sort out. The court is to establish Powell's criminal history score and impose the sentence it finds to be just and proper.

2.    *Consecutive sentences*

Because we have overturned Powell's two convictions for aggravated endangerment of a child, we need not address his claims of consecutive sentences error. Sentences for those two counts are vacated.

3.    *Registration as a violent offender*

Powell argues that the sentencing court did not make the necessary factual findings to require that he register as a violent offender at the time of his conviction. He contends that, under the statute, a sentencing court must make the necessary findings at the time of conviction to rely on the findings to order a defendant to register as a violent offender. Because the finding here occurred after his conviction, Powell argues that the

requirement that he register as a violent offender was erroneous and he must not be subject to any offender registration obligations.

In its response, the State argues that the Supreme Court has "made it clear that a district court must make a [deadly weapon] finding on the record before [a Kansas Offender Registration Act] obligation to register as a violent offender arises." *State v. Carter*, 311 Kan. 206, 209, 459 P.3d 186 (2020). The State goes on and points out that our Supreme Court "has also held that the required finding on the record does not need to be made from the bench at the time of conviction but can be made at another time and can be done through a finding in the journal entry of judgment." See *State v. Marinelli*, 307 Kan. 768, 788-89, 415 P.3d 405 (2018).

The sentencing court here deferred making the findings about whether Powell should be required to register as a violent offender at Powell's request. Powell expressly waived any challenge to the procedure in which the sentencing court made the necessary findings to require offender registration. If this is error, then it is invited error and Powell cannot now complain about delaying these findings when he asked the court for that delay. See *State v. Smith*, 317 Kan. 130, 139, 526 P.3d 1047 (2023).

But even if we deem that the issue was preserved and not waived due to invited error, the record shows that the sentencing court made the necessary findings based on the jury's verdict, findings which were made at the time of conviction. Thus, the statutory requirements were met and the sentencing court properly ordered that Powell register as a violent offender.

4.      *Making a use of a deadly weapon finding*

Powell contends that the sentencing court made a finding that Powell used a deadly weapon in committing his crimes without realizing it had the discretion to refrain

from making such a finding. Such a finding triggers a registration requirement under the Kansas Offender Registration Act, K.S.A. 22-4901 et seq. Powell contends that the sentencing court thought that it was *required* by law to make that deadly weapon finding. In his view, then, the court's decision to make that finding was an abuse of discretion.

A brief review of the record provides a context for our holding. Powell was convicted of aggravated battery, a severity level 4 person felony; aggravated battery, a severity level 8 person felony; aggravated endangering a child, a severity level 9 person felony; and aggravated endangering a child, a severity level 9 person felony.

To be deemed a violent offender under the Kansas Offender Registration Act, the sentencing court needed to make findings on the record that a deadly weapon was used when Powell committed his crimes. See K.S.A. 22-4902(e)(2); *State v. Huggins*, No. 121,878, 2021 WL 69739, at *5 (Kan. App. 2021) (unpublished opinion). These findings are made at the time of conviction, not sentencing.

During a motions hearing after the trial, the district court deferred making a finding about the use of a firearm and a corresponding registration requirement at Powell's request for additional time to research the matter. The court noted that registration should occur before sentencing but took Powell's request as a waiver of that procedure and specified that the court would address registration and the question of a deadly weapon finding at sentencing. With the deferral, the court stated that "[s]o as long as the defendant is agreeing that it won't be attacked from a procedural perspective . . . ."

Powell responded that he would not be making any "procedural based arguments for him not registering" at the time of the hearing and instead at sentencing. The State noted that whether the registration finding occurred at this hearing or at sentencing, because the jury was instructed that Powell committed his crimes with a deadly weapon, the State requested that the court make the deadly weapon finding at the motions hearing.

13

Later, at the sentencing hearing, Powell conceded that a firearm is included as a deadly weapon under Black's Law Dictionary. See Black's Law Dictionary 1914 (12th ed. 2024). But he argued that a jury should make the finding that a deadly weapon was used in the commission of his crimes. Powell noted his conviction did, indeed, contain a deadly weapon element but argued that the jury may have alternatively found that great bodily harm could have resulted, not necessarily finding that a deadly weapon was used. He also argued that the way that the firearm was used was substantially less likely to result in death than in a typical case where a firearm was discharged. The sentencing court noted that the finding was not a matter of discretion, but mandatory.

With this record, we hold that the sentencing court appropriately and properly found that Powell committed his crimes with the use of a deadly weapon, thus triggering a registration requirement. The jury convicted Powell based on his conduct of firing a handgun, striking his stepson and stepdaughter, with two minor children in the room when he waived the gun around and threatened to shoot other people in the room afterward. Based on the evidence at trial and the jury's verdict, the sentencing court properly found that a handgun is a deadly weapon, and that weapon was used in the commission of person felonies. Thus, the sentencing court appropriately ordered Powell to register as a violent offender.

5.      *Did the court's registration findings violate* Apprendi *rules?*

For his last sentencing issue, Powell maintains that the sentencing court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by making factual findings that compelled him to register as a violent offender.

The law is well-settled on this point. The requirement that a convicted felon register under the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., is not punishment; therefore, any fact-finding made by the court to determine whether

14

registration is required is not unconstitutional. See *State v. Petersen-Beard*, 304 Kan. 192, 209, 377 P.3d 1127 (2016). Retroactive application of the Act does not violate the Ex Post Facto clause because the Act is not punishment. *State v. Davidson*, 314 Kan. 88, 93-94, 495 P.3d 9 (2021).

We follow Supreme Court precedent on this point. That precedent instructs that a sentencing court does not violate the *Apprendi* rules when it makes factual findings necessitating the defendant register as a violent offender. See *Davidson*, 314 Kan. at 93-94; *Petersen-Beard*, 304 Kan. at 209. We hold that there is no violation of *Apprendi* here.

Affirmed in part, reversed in part, sentences vacated, and case remanded with directions.